## COMMISSIONER OF HEALTH SERVICES *v.* WILLIAM W. BACKUS HOSPITAL ET AL.

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE No. 296276
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed October 3, 1984

*Robert Statchen,* assistant attorney general, for the plaintiff.

*Allyn L. Brown, Jr.,* for the defendants.

M. HENNESSEY, J. On June 22, 1984, an authorized agent of the commissioner of health services issued a subpoena duces tecum against the defendant Backus Hospital to procure information regarding medical treatment rendered by a hospital physician. The commissioner was acting under his authority to conduct investigations regarding possible violations of statutes or regulations by licensed physicians under the auspices of the Connecticut medical examining board, an agency within the department of health services. See General Statutes §§ 19a-14 (a) (10), 19a-14 (b) (1) and 20-8a. Specifically, the subpoena sought "[a]ny and all infor-

mation, reports, etc., with reference to the care and treatment rendered by [a hospital physician to two named patients] . . . including but not limited to peer review, utilization review, in-house investigations and recommendations, disciplinary actions and proceedings."

The hospital refused to comply with the subpoena based on its contention that such information is privileged, pursuant to the terms of General Statutes § 38-19a (d). The commissioner has petitioned this court for an order enforcing the subpoena duces tecum.

At issue is whether the commissioner of health services has a right of access to the peer review proceedings of a medical review committee.

The Connecticut medical examining board, established pursuant to General Statutes § 20-8a, is an agency within the department of health services. Section 20-13c of the General Statutes authorized the board to restrict, suspend or revoke the license or limit the practice of a physician upon a finding that such physician is unable to practice medicine with reasonable skill or safety for any of the following reasons: "(1) Physical illness or loss of motor skill, including but not limited to deterioration through the aging process; (2) emotional disorder or mental illness; (3) abuse or excessive use of drugs, including alcohol, narcotics or chemicals; (4) illegal, incompetent or negligent conduct in the practice of medicine; (5) possession, use, prescription for use, or distribution of controlled substances or legend drugs, except for therapeutic or other medically proper purposes; (6) misrepresentation or concealment of a material fact in the obtaining or reinstatement of a license to practice medicine; or (7) violation of any provision of this chapter or any regulation established hereunder." General Statutes § 20-13c.

In conjunction with this disciplinary authority, the department of health services is authorized to "[c]onduct any necessary review, inspection or investigation regarding qualifications of applicants for licenses or certificates, possible violations of statutes or regulations, and disciplinary matters." General Statutes § 19a-14 (a) (10). "In connection with any investigation, the commissioner of health services or said commissioner's authorized agent may administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents. If any person refuses to appear, to testify or to produce any book, record or document when so ordered, a judge of the superior court may make such order as may be appropriate to aid in the enforcement of this section." Id. Pursuant to this broad grant of subpoena power, the commissioner sought production of the hospital's peer review proceedings relative to the physician under investigation.

The hospital contends, however, that such information is shielded from discovery pursuant to General Statutes § 38-19a (d). This statute provides as follows: "(d) The proceedings of a medical review committee conducting a peer review shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to the content of such proceedings; provided the provisions of this subsection shall not preclude (1) in any civil action, the use of any writing which was recorded independently of such proceedings; (2) in any civil action, the testimony of any person concerning the facts which formed the basis for the institution of such proceedings of which he had personal knowledge acquired independently of

such proceedings; (3) in any health care provider proceedings concerning the termination or restriction of staff privileges, other than peer review, the use of data discussed or developed during peer review proceedings; or (4) in any civil action, disclosure of the fact that staff privileges were terminated or restricted, including the specific restrictions imposed, if any."

The hospital argues that none of the enumerated statutory exceptions applies to this case and that release of the minutes of peer review proceedings to the plaintiff would thwart the intent of the statute, i.e., to promote the uninhibited evaluation of medical care rendered in a professional setting. The plaintiff contends, inter alia, that the statute does not apply to investigatory actions and that sufficient statutory protection exists protecting the confidential nature of these proceedings once such information is released to the department of health services.

No reported Connecticut cases have been found construing the applicability of § 38-19a (d) to investigations conducted by the department of health services. This issue has generally arisen in the context of medical malpractice litigation where the plaintiff seeks to bolster a negligence claim by use of peer review proceedings. See *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 324–26, 430 A.2d 1 (1980). In *Morse* v. *Gerity,* 520 F. Sup. 470 (D. Conn. 1981), the district court invoked the statutory privilege in a malpractice action denying the plaintiff access to documentation of such proceedings. Id., 471. A similar result obtained in states with analogous statutes. See *Danklef* v. *Wilmington Medical Center,* 429 A.2d 509, 510 (Del. Super. 1981); *Eubanks* v. *Ferrier,* 245 Ga. 763, 764, 267 S.E.2d 230 (1980); *Young* v. *Gersten,* 56 Ohio Misc. 1, 3, 381 N.E.2d 353 (Ct. Comm. Pl. 1978); *Henry Mayo Newhall Memorial Hospital* v. *Superior Court,* 81 Cal. App. 3d 626, 635, 146 Cal. Rptr. 542 (1978).

The language of § 38-19a (d) specifically limits the scope of the privilege to "any civil action for or against a health care provider." While both the facility against which the subpoena is directed, Backus Hospital, and the physician under investigation are considered health care providers under the statute; General Statutes § 38-19a (a) (i) (definition of "health care provider"); the department of health services' investigation cannot be termed a "civil action" for purposes of this privilege.

Numerous cases have defined the term "civil action" as it is used in various statutes. "The accepted meaning of the term 'civil action' in this State is very well illustrated by the provision of our Practice Act (General Statutes, § 607) [now § 52-91] that 'there shall be but one form of civil action, and the pleadings therein shall be as follows: The first pleading on the part of the plaintiff shall be known as the complaint . . . .' " *Hartford Electric Light Co.* v. *Tucker,* 35 Conn. Sup. 609, 614, 401 A.2d 454 (1978), citing *Slattery* v. *Woodin,* 90 Conn. 48, 50, 96 A. 178 (1915); see also *Chieppo* v. *Robert E. McMichael, Inc.,* 169 Conn. 646, 653, 363 A.2d 1085 (1975); *Bank Building & Equipment Corporation* v. *Architectural Examining Board,* 153 Conn. 121, 124, 214 A.2d 377 (1965); cf. *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 421–23, 426 A.2d 1324 (1980) (defining "civil cause"). The plaintiff's investigation, which is not initiated by a complaint in the legal sense, does not fall within the above-cited definition of "civil action."

A similar conclusion would be reached upon a review of the legislative history of § 38-19a. Much of the testimony during public hearings and during senate and house floor debate cites the need to protect peer review committee members against defamation actions initiated by reviewed physicians as well as to ensure that peer review discussions would not form the basis of medical malpractice litigation. See, e.g., Hearings

before the Joint Standing Committee on Public Health & Safety, 1976 Sess., pp. 284–85; 23 H.R. Proc., Pt. 24, 1980 Sess., p. 7098 (1980 amendment). There is no indication that such proceedings were intended to be shielded from discovery by the state agency charged with overseeing health care providers. Indeed, if the General Assembly had intended the privilege against disclosure to be all-encompassing, the statute could have contained language similar to that within General Statutes § 19a-25 governing morbidity and mortality studies. ("Such information, records, reports, statements . . . shall not be admissible as evidence in any action of any kind in any court or before any other tribunal, board, agency or person . . . .")

Finally, the defendant's argument that the statute's policy of promoting uninhibited discussion by medical personnel during peer review proceedings will be thwarted by releasing this information to the plaintiff pales in light of recent legislative changes to the department's investigatory procedures. Owing to the enactment of Public Acts 1984, No. 84-148 during the General Assembly's 1984 session, the department of health services must maintain the confidentiality of any investigation conducted pursuant to General Statutes § 20-13d. Such information may be released and made public only upon the happening of certain specified conditions. Public Acts 1984, No. 84-148, § 2. As a result, the statutory scheme governing the evaluation of health care providers strikes a careful balance between the need for an unrestrained and objective review of alleged misconduct in the medical profession and the legitimate concerns of physicians and medical personnel for the maintenance of their reputations and standing in the community. See Connecticut General Assembly, Public Health & Safety Committee, Public Hearing, March 9, 1984, p.11.

On the basis of the foregoing, we conclude that the plaintiff has a right of access to the subject peer review proceedings. Accordingly, the plaintiff's petition is granted. The defendant is ordered to comply with the subpoena duces tecum within twenty days of the date of this decision.