COMMISSIONER OF HEALTH SERVICES *v.*
HAROLD KADISH
(6539)

BORDEN, O'CONNELL and STOUGHTON, Js.

*(One judge dissenting)*

Argued November 2, 1988—decision released March 7, 1989

*Andrea B. Gaines,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellant (plaintiff).

*R. Bartley Halloran,* with whom, on the brief, was *Salvatore Bonanno,* for the appellee (defendant).

BORDEN, J. The sole question of this appeal is whether the record of a medical peer review proceeding is statutorily immune from production in an investigation of a health care professional by the department of health services. The plaintiff commissioner appeals from the judgment of the trial court granting a motion to quash a subpoena duces tecum served on the defendant, the chairperson of the Tolland County Dental Society peer review committee.[1] The trial court held that the record of the committee's proceedings are shielded from production by General Statutes § 38-19a (d). We find error.

The record discloses the following facts. The plaintiff, under authority of investigatory powers granted the department of health services,[2] was investigating

---

[1] Although the parties have not questioned our jurisdiction to hear this appeal, we address sua sponte whether the judgment appealed from is a final judgment. See *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.,* 180 Conn. 223, 225, 429 A.2d 478 (1980). We conclude that it is.

Ordinarily, discovery orders and the like are not final judgments for purposes of appeal. Id., 226; *Holyoke Mutual Ins. Co. in Salem* v. *Papa,* 13 Conn. App. 808, 534 A.2d 917 (1987). That rule clearly applies in civil actions where the discovery order is directed to one of the parties, because the aggrieved party may present the ruling of the court for review on appeal at the termination of the case. See *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.,* supra, 228.

In this case, however, the only proceeding before the trial court involved the propriety of the investigative subpoena. That proceeding will not result in a later judgment from which the defendant can then appeal. Thus, this appeal falls within the first prong of the test of finality of judgment stated in *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983): "(1) where the order or action terminates a separate and distinct proceeding." The court's order quashing the plaintiff's subpoena terminated the separate and distinct judicial proceeding that was instigated solely to test the propriety of the administrative subpoena.

[2] General Statutes § 19a-14 (a) provides in relevant part: "The department of health services shall have the following powers and duties with

a licensed dentist, Arthur Fitzgerald, for possible violations of his license to practice, arising out of his treatment of a particular patient. The committee had conducted a peer review of Fitzgerald's treatment of that patient. Pursuant to his authority under General Statutes § 19a-14 (a) (10), the plaintiff issued a subpoena duces tecum to the defendant in his capacity as chairperson of the committee, seeking the records of the committee's review of that treatment. The defendant failed to appear and produce the records, and the plaintiff petitioned the trial court for enforcement. The defendant then moved to quash the subpoena, and the court granted the defendant's motion to quash. This appeal followed.

The plaintiff's argument, which we find dispositive, is that the trial court erred in holding that General Statutes § 38-19a (d)[3] prevents the plaintiff from discovery

regard to the boards and commissions listed in subsection (b) which are within the department of health services. The department shall: . . .

"(10) Conduct any necessary review, inspection or investigation regarding qualification of applicants for licenses or certificates, possible violations of statutes or regulations, and disciplinary matters. In connection with any investigation, the commissioner of health services or said commissioner's authorized agent may administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents. If any person refuses to appear, to testify or to produce any book, record or document when so ordered, a judge of the superior court may make such order as may be appropriate to aid in the enforcement of this section . . . ."

[3] General Statutes § 38-19a (d) provides: "The proceedings of a medical review committee conducting a peer review shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to the content of such proceedings; provided the provisions of this subsection shall not preclude (1) in any civil action, the use of any writing which was recorded independently of such proceedings; (2) in any civil action, the testimony of any person concerning the facts which formed the basis for the institution of such proceedings of which he had personal knowledge acquired independently of such proceedings; (3) in any health care provider proceedings concerning the termination or restriction

of the committee's records of its peer review of Fitzgerald. The defendant argues, and the trial court agreed,[4] that the peer review proceedings are immune from discovery by virtue of General Statutes § 38-19a (d). We disagree.

General Statutes § 38-19a (d) provides that peer review proceedings conducted by a medical review committee are not "subject to discovery or introduction into evidence *in any civil action* for or against a health care provider . . . ." (Emphasis added.) Whether a statutory proceeding is a civil action depends on the purpose for which the legislature created the proceeding and the most efficacious way to carry out that purpose. *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App. 339, 344, 494 A.2d 606, cert. denied, 197 Conn. 806, 499 A.2d 57 (1985). Even those statutory proceedings that have been held to be civil actions in other contexts; see, e.g., *Carbone* v. *Zoning Board of Appeals*, 126 Conn. 602, 604–607, 13 A.2d 462 (1940); were proceedings in court and not, as here, purely administrative investigatory proceedings. See also Practice Book § 256 (administrative appeals to Superior Court are civil

of staff privileges, other than peer review, the use of data discussed or developed during peer review proceedings; or (4) in any civil action, disclosure of the fact that staff privileges were terminated or restricted, including the specific restrictions imposed, if any."

[4] The defendant also argues that we need not reach the issue of whether General Statutes § 38-19a (d) shields the committee's records from the plaintiff's subpoena, because the trial court did not decide that issue but merely exercised its discretion to decline to enforce the subpoena pursuant to General Statutes § 19-14 (a) (10). This argument mischaracterizes the theory on which the case was tried and decided by the trial court. The trial court stated the claim of the defendant as follows: "The defendant claims the Peer Review Committee is protected by immunity according to Conn. Gen. Stats. § 38-19a." The court stated the issue before it as "whether the proceeding in the hands of the Tolland County Peer Review Committee is protected from the demands of the Commissioner by immunity." We decide this case on the theory on which it was tried and decided in the trial court. *Neumann* v. *Zoning Board of Appeals*, 14 Conn. App. 55, 62, 539 A.2d 614 (1988).

actions for purposes of rules of practice, but not for purposes of certain statutes). We agree with the well reasoned decision of the Superior Court, in another case, that an investigation by the commissioner of health services is not a "civil action" within the meaning of General Statutes § 38-19a (d). See *Commissioner* v. *William W. Backus Hospital,* 40 Conn. Sup. 188, 190, 485 A.2d 937 (1984) (*M. Hennessey, J.*).

We are unpersuaded by the dissent's reliance on *Morse* v. *Gerrity,* 520 F. Sup. 470 (D.C. Conn. 1981), because that was a medical malpractice action—clearly a "civil action"—in which the issue was whether the statutory privilege covered peer review proceedings unrelated to the subject matter of the case before the court. Id., 471. It did not address the issue of whether an administrative investigatory proceeding is a "civil action" within the meaning of the statute.

Indeed, the dissent's policy argument proves too much, because General Statutes § 38-19a (d) does not create an absolute privilege; the statute itself carves out limits and exceptions where peer review proceedings are disclosable. The statutory privilege is limited to "any civil action *for or against a health care provider* . . . ." (Emphasis added.) General Statutes § 38-19a (d). Thus, even in the context of a civil action between other parties, peer review proceedings, if otherwise relevant, are not shielded; and peer review proceedings are not shielded "in any health provider proceedings concerning the termination or restriction of staff privileges . . . ." General Statutes § 38-19a (d) (3). Furthermore, we fail to see how, as the dissent suggests, the meaning of "civil action" as used in the statute differs when it is applied to a dentist, as opposed to a physician.

Finally, the dissent's reliance on the purported exercise of discretion by the trial court simply mischarac-

terizes how the case was tried and decided in the trial court. See footnote 4, supra. The trial court did not nor was it asked to exercise any such discretion.

There is error, the judgment is set aside and the case is remanded with direction to render judgment denying the motion to quash and ordering enforcement of the subpoena duces tecum.

In this opinion STOUGHTON, J., concurred.

O'CONNELL, J., dissenting. I disagree with the decision of the majority and would find no error.

Peer review statutes are intended to encourage frank, uninhibited discussion, debate and criticism by the peers of a health care provider with projected goals of, inter alia, continuing professional education, evaluation of the quality of patient care, renewal of privileges, complaint investigation and malpractice review.[1] The peer review committee's proceedings are designed to be free from the chilling concern that they would become public and expose its members to the involvement of civil litigation and the glare of public attention.

"[A]lthough the privilege is not absolute, the legislative history and judicial decisions in other jurisdictions with similar statutes, although sparse, support a liberal interpretation both as a matter of statutory construction and public policy. See, e.g., *Scott* v. *McDonald*, 70 F.R.D. 568 (N.D.Ga. 1976); *Eubanks* v. *Ferrier*, 245 Ga. 763, 267, S.E.2d 230, 232 (1980); *Young* v. *Gersten*, 56 Ohio Misc. 1, 381 N.E.2d 353 (Ohio C.P. Franklin County, 1978). Indeed, if the purpose of the statute is to encourage doctors to evaluate their peers without fear of disclosure, that purpose would be hampered by public release of any proceedings

[1] R. Brunell, "Connecticut's Peer Review Immunity Statute: A Legislative History of P.A. 76-413," *Connecticut Medicine* (September 1979).

. . . . The danger of inhibiting candid professional peer review exists by the mere potential for disclosure. Any possibility that proceedings might be discoverable at a future date . . . presents a risk that a doctor will be reluctant to provide the meaningful peer review contemplated by the statute. The overriding importance of these review committees to the medical profession and the public requires that doctors have unfettered freedom to evaluate their peers in an atmosphere of complete confidentiality. No chilling effect can be tolerated if the committees are to function effectively." *Morse* v. *Gerity*, 520 F. Sup. 470, 472 (1981).

In enforcing the plaintiff's subpoena, the majority's reliance on *Commissioner* v. *William W. Backus Hospital*, 40 Conn. Sup. 188, 485 A.2d 937 (1984), is misplaced. That case involved an investigation of a physician, whereas, here, we are concerned with the investigation of a dentist. This seemingly unimportant distinction takes on great significance when General Statutes §§ 38-19a (d), 1-19a and 19a-14d[2] are con-

---

[2] General Statutes § 38-19a (d) provides: "The proceedings of a medical review committee conducting a peer review shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to the content of such proceedings; provided the provision of this subsection shall not preclude (1) in any civil action, the use of any writing which was recorded independently of such proceedings; (2) in any civil action, the testimony of any person concerning the facts which formed the basis for the institution of such proceedings of which he had personal knowledge acquired independently of such proceedings; (3) in any health care provider proceedings concerning the termination or restriction of staff privileges, other than peer review, the use of data discussed or developed during peer review proceedings; or (4) in any civil action, disclosure of the fact that staff privileges were terminated or restricted, including the specific restrictions imposed, if any."

The pertinent part of General Statutes § 1-19 (a) provides: "Except as otherwise provided by any federal law or state statute, all records main-

sidered in conjunction with each other. Statutes are to be read together to form one consistent body of law. *McKinley* v. *Musshorn,* 185 Conn. 616, 623, 441 A.2d 600 (1981); *Budkofsky* v. *Commissioner of Motor Vehicles,* 177 Conn. 588, 592, 419 A.2d 333 (1979). The effect of these three statutes when read together is that records of all health department investigations become public one year after their initiation, except those of physicians which appear to remain immune from disclosure in perpetuity. Thus, the members of the *Backus* medical peer review committee were not confronted with the eventual public disclosure of their deliberations.[3] Lacking the benefit of such a perpetual privacy shield, it is clear that dental peer review proceedings implicate considerations quite distinct from those of their medical review counterpart.

Determination of the issue now before the court on a technical definition of *civil action* emasculates the peer review statute. When interpreting a statute, the court should look beyond the literal meaning of its words to its history, the circumstances surrounding its enactment, the mischief it was designed to remedy and the policy underlying it. *Board of Education* v. *Board of Labor Relations,* 201 Conn. 685, 690, 519 A.2d 41

---

tained are kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records . . . ."

The pertinent part of General Statutes § 19a-14d provides: "All records obtained by the department in connection with any investigation of a person or facility over which the department has jurisdiction under this chapter, *other than a physician* . . . shall not be subject to the provisions of § 1-19 for a period of one year from the date of the petition or the event initiating such investigation or until such time as the investigation is terminated . . . ." (Emphasis added.)

[3] This may account for the apparent lack of vigorous opposition by the *Backus* peer review committee. No appearance was filed on behalf of the defendants in that case; *Commissioner* v. *William W. Backus Hospital,* 40 Conn. Sup. 188, 485 A.2d 937 (1984); leaving unanswered the question of how the defendants presented their contention and arguments to which the court referred.

(1986). The majority's narrow definition of *civil action* construes it in isolation from the scheme and purpose of the peer review program.

The position of the majority produces an anomalous result. It permits the dental peer review committee's deliberation and records eventually to become public after subpoena by the health commissioner. At this point, the cat is out of the bag, so to speak. In a later civil action, however, § 38-19a (d) would preclude this information from being introduced into evidence and committee members would be prohibited from testifying as to the content of the committee proceedings. Statutes are not to be interpreted so as to produce a bizarre or unusual result. *State* v. *Scott,* 11 Conn. App. 102, 119, 525 A.2d 1364, cert. denied, 204 Conn. 811, 528 A.2d 1157 (1987); *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 438, 489 A.2d 398 (1985), aff'd, 200 Conn. 630, 636, 513 A.2d 52 (1986). Construing the statute to affirm quashing the commissioner's subpoena avoids this bizarre result of attempting to close the barn door after the horse is stolen and plugs a hole in the confidentiality of the peer review system. Furthermore, affirmance of the trial court's decision is consistent with the policy of not construing a statute in a manner that will thwart its purpose. *Sutton* v. *Lopes,* 201 Conn. 115, 121, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); *Breen* v. *Department of Liquor Control,* 2 Conn. App. 628, 631, 481 A.2d 755 (1984).

Additionally, the position of the commissioner of health appears to be that the court *must* enforce his subpoena upon request. I do not agree. The pertinent part of General Statutes § 19a-14 (a) (10) provides: "If a person refuses to . . . produce any book, or record or document . . . a judge of the superior court *may* make such order as *may* be appropriate to aid in

enforcement of this section." (Emphasis added.) It is elementary, with exceptions not applicable here, that the word *may* connotes discretionary action as contrasted with *shall* which implies a duty. *Farricielli* v. *Personnel Appeal Board,* 186 Conn. 198, 202, 440 A.2d 286 (1982). In considering discretionary actions of the trial court, appellate review is limited to a determination of whether the trial court abused its discretion. *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 54, 492 A.2d 223 (1985).

I recognize that the conflicting interests of the commissioner of health and the dental peer review committee requires a balancing of these interests by the trial court. "When a matter involving a difficult balancing process has been entrusted to the discretion of the trial court, the scope of appellate review is limited. In any such review 'every reasonable presumption should be given in favor of the trial court's ruling'; *State* v. *Ryan,* 182 Conn. 335, 337, 438 A.2d 107 (1980); and we should reverse the trial court's decision 'only where abuse of discretion is manifest or where an injustice appears to have been done.' *State* v. *Johnson,* [190 Conn. 541, 549, 461 A.2d 981 (1983).]" *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 714, 501 A.2d 377 (1985). In the present case, the trial court carefully weighed these conflicting interests and decided in favor of the peer review committee. I am unable to find manifest abuse of discretion or an injustice, either of which is a predicate to reversal of the trial court's decision.

In exercising its discretion, the trial court carefully considered the failure of the commissioner to show that the material sought in the subpoena was not available elsewhere. I concur with this reasoning. The commissioner does not claim that the information sought in his subpoena could be obtained only by invasion of the peer review proceedings. Accordingly, the commis-

sioner may subpoena the peer review members to appear and testify directly at the commissioner's hearing. See *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 317, 430 A.2d 1 (1980).

The trial court did not abuse its discretion when it quashed the subpoena and I would affirm its decision.

For the foregoing reasons, I dissent.