[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR PROTECTIVE ORDER
This medical malpractice action was commenced by the plaintiff, Cathy Ubillus, Administratrix of the Estate of Pedro Ubillus, and Cathy Ubillus, individually, by complaint dated December 12, 1994, against Michael James, M.D.; Danbury Office of Physician Services; Gilead Lancaster, M.D.; John Burris, M.D.; and Danbury Hospital. All defendants have filed answers to the complaint and discovery has commenced.
One of the main issues in this case concerns the fact that the hospital did not have a piece of medical equipment known as an intra-aortic CT Page 1353-Q balloon pump (IABP) at its disposal when it performed a cardiac catheterization procedure on the plaintiff's decedent. The plaintiff asserts that the defendants' failure to have such a device constituted negligence which resulted in the death of Pedro Ubillus.
On September 27, 1995, the plaintiff noticed the deposition of Dr. David Copen, M.D., a non-party, and requested that he produce "[c]opies of any memorandum, letters or reports which [he has in his] . . . possession, and which pertain in any way to this incident and/or the equipment involved in the procedure which is the subject of this litigation, excluding those documents which are protected by the attorney-client privilege or work-product doctrine . . . ."
On November 9, 1995, the defendants jointly filed a motion for a protective order, seeking to bar the plaintiff's request that certain documents be produced at Dr. Copen's deposition. Specifically, the defendants asserted that the request called for production of documents protected by General Statutes § 19a-17b since some of the documents were "generated during peer review or quality assurance proceedings."
On January 2, 1996, this court held a hearing on the issue and subsequently conducted an in camera review of the documents in question. According to the defendants, Dr. Burris testified at his deposition that he authored two memoranda addressed to Dr. Copen regarding the alleged appropriateness of purchasing an IABP device for Danbury Hospital. In addition, at Dr. Burris' request, a Dr. John Baldwin, who is not associated with this case wrote to Danbury Hospital to assist Dr. Burris in soliciting support for the purchase of an IABP device. The plaintiff seeks production of all three of these documents. Dr. Baldwin's letter cannot be found.
The defendants' argument is that the memoranda constitute "peer review" within the meaning of General Statutes § 19a-17b and, as such, are exempt from disclosure. The defendants do not point to any direct authority in support of this proposition, and the court's independent research likewise did not disclose any cases on the issue. Of the handful of cases which have discussed § 19a-17b and its predecessors § 38-19a and52-197a, the litigated issues have typically been whether the proceeding in which discovery is sought is a "civil action" within the meaning of the statute. See, e.g., Commissioner v. William W. Backus Hospital,40 Conn. Sup. 188, 485 A.2d 937 (1984); Commissioner of Health Services v.Kadish, 17 Conn. App. 577, 554 A.2d 1097 (1989); Stroebel v. Norbeck,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705139 (August 17, 1994, O'Neill, J.).
The defendants rely on the general principles in support of the "peer CT Page 1353-R review" provision of § 19a-17b, namely, that by considering peer review documents exempt from disclosure, the legislature intended "to encourage meaningful peer review by assuring the confidentiality of all proceedings conducted by a medical review committee." Morse v.Gerity, 520 F. Sup. 470, 471 (1981).
In response, the plaintiff argues that the memoranda at issue are not protected by § 19a-17b because they do not meet the definition of "peer review" contemplated under the statute. The plaintiff characterizes the issue as follows: "The record establishes the following: (1) Dr. Burris independently gathered information regarding the need for an IABP and; (2) the memoranda were generated following informal discussions between Dr. Burris and Dr. Copen . . . . Informal discussions between two physicians does not meet the definition of a `peer review' proceeding, conducted during the course of a `medical review committee,' and therefore the memoranda which followed those discussions are not shielded from discovery."
General Statutes § 19a-17b(a) provides, in relevant part: "For the purposes of this section: . . . . (2) `Peer review' means the procedure for evaluation by health care professionals of the quality and efficiency of services ordered or performed by other health care professionals, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review and claims review."
Having found no cases which directly confront the issue of what constitutes a "peer review" process in the context of § 19a-17b, the court will employ a plain meaning analysis of the words used in the statute. The court accepts the plaintiff's characterization of the context in which the documents were produced; that is, as the result of independently-conducted research by Dr. Burris and following informal (that is to say, not initiated at the hospital's request or as a part of an established or regularly scheduled meeting of any committee of the hospital) discussions between Dr. Burris and Dr. Copen.
In this context, it cannot be said that the documents in question were prepared within the framework of a peer review process. Accordingly, the court denies the defendants' motion for a protective order.
Stodolink, J. CT Page 1353-S