**PROTECTION & ADVOCACY FOR PERSONS WITH DISABILITIES, STATE OF CT, Plaintiff–Appellee,**

v.

**MENTAL HEALTH & ADDICTION SERVICES, Thomas A. Kirk /o Comm, Defendant–Appellant,**

Connecticut Hospital Association, Inc. and National Association of Protection and Advocacy Systems, Amicus Curiaes.

**Docket No. 05–1457–CV.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 28, 2006.

Decided: May 5, 2006.

Rosemary M. McGovern, Assistant Attorney General (Richard Blumenthal, At-

torney General of the State of Connecticut, Richard J. Lynch and Thomas J. Ring, Assistant Attorneys General, on the brief), Hartford, Connecticut, for Defendant–Appellant.

Nancy B. Alisberg, Managing Attorney, Office of Protection & Advocacy for Persons with Disabilities, Hartford, Connecticut, for Plaintiff–Appellee.

Jennifer A. Osowiecki, Cox & Osowiecki, LLC, Hartford, Connecticut, for Amicus Curiae Connecticut Hospital Association, Inc.

Kenneth Pasquale, Stroock & Stroock & Lavan LLP, New York, New York, for Amicus Curiae National Disability Rights Network, formerly known as National Association of Protection and Advocacy Systems.

Before: SOTOMAYOR and RAGGI, Circuit Judges, and CEDARBAUM, District Judge.*

SOTOMAYOR, Circuit Judge.

This case raises the question whether the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"),[1] 42 U.S.C. §§ 10801–10851 (2000), requires defendant-appellant the Connecticut Department of Mental Health and Addiction Services, through its commissioner, Thomas A. Kirk, ("the Department") to disclose peer review records to plaintiff-appellee the Connecticut Office of Protection and Advocacy for Persons with Disabilities

("OPA"). For the reasons that follow, we hold that PAIMI unambiguously grants OPA access to peer review records and affirm the district court's entry of a declaration and injunction requiring the Department to disclose to OPA the peer review records at issue.

## BACKGROUND

The parties have stipulated to the relevant facts. OPA is a state-created agency that is authorized to represent and investigate suspected abuse of individuals with disabilities or mental illness residing in facilities in Connecticut. *See* Conn. Gen. Stat. §§ 46a–10 to 46a–11 (2003). OPA serves as the protection and advocacy ("P & A") system for Connecticut pursuant to PAIMI, 42 U.S.C. § 10801(b)(2). Enacted in the wake of disturbing reports about the treatment of institutionalized persons with disabilities, *see* S.Rep. No. 99–109, at 2–3 (1985), *reprinted in* 1986 U.S.C.C.A.N. 1361, 1362–63, PAIMI provides federal funds for states, such as Connecticut, that have qualifying P & A systems that monitor the care of individuals with disabilities and mental illness in facilities providing care and treatment. *See* 42 U.S.C. § 10801.

On January 21, 2000, Rose Marie Cinami, a patient at the Cedarcrest Hospital who was diagnosed with schizophrenia, died after choking on her breakfast. OPA subsequently opened an investigation into her death. The administrator of Cinami's

---

* The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

1. Enacted in 1986 as the "Protection and Advocacy for Mentally Ill Individuals Act of 1986," Pub.L. No. 99–319, 100 Stat. 478 (May 23, 1986), the Act was commonly referred to by the acronym "PAMII." *See, e.g., Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1263 (10th Cir.2003). In 1991, amendments to the Act substituted "individuals with men-

tal illness" for "mentally ill individuals" wherever it appeared in the Act. *See* Pub.L. No. 102–173, § 10(2), 105 Stat. 1217, 1219 (Nov. 27, 1991). The short title, however, remained unchanged. In 2000, Congress amended the short title so that the Act is now known as the "Protection and Advocacy for Individuals with Mental Illness Act" or "PAIMI." *See* Pub.L. No. 106–310, 114 Stat. 1101, 1193–94 (Oct. 17, 2000).

estate authorized OPA to access her records and OPA requested all of Cedarcrest Hospital's records relating to her care. Cedarcrest Hospital, which is administered by the Department, disclosed all of its records relating to Cinami's care except for its peer review records. Peer review records are those created by or for the peer review committee at Cedarcrest Hospital. The hospital peer review committee is a "committee of Cedarcrest Hospital" comprised of healthcare staff at the hospital that "engage[s] in the evaluation . . . of the quality and efficiency of services ordered or performed by other health care professionals."

On April 3, 2002, James Bell, a patient at the Whiting Forensic Institute division of the Connecticut Valley Hospital, died while being transported in restraints. OPA opened an investigation into his death and requested all records relating to his case, including the peer review records. Because Bell had died and OPA made a probable cause determination that he had been subject to abuse or neglect, it did not need consent to obtain the files. *See* 42 U.S.C. § 10805(a)(4)(B). The Whiting Forensic Institute, which is also administered by the Department, released to OPA all of Bell's records except for its peer review records. The Department withheld both sets of peer review records on the ground that peer review documents are privileged under Connecticut law.

OPA filed this action pursuant to 42 U.S.C. § 1983 and PAIMI in the United States District Court for the District of Connecticut, seeking a declaration that it is entitled to the peer review records relating to Bell and Cinami under PAIMI and an injunction requiring the Department to release the records. OPA's motion for a preliminary injunction was denied without prejudice to its arguments being raised on a motion for summary judgment. Both

parties then moved for summary judgment on the basis of stipulated facts. OPA argued that it was entitled to the peer review records because § 10805(a)(4) of PAIMI authorizes it to have access "to all records of . . . any individual" who has consented to OPA access or whom OPA has probable cause to believe has been abused, and because § 10806(b)(3)(A) defines "records" to include "reports prepared by any staff of a facility rendering care and treatment." 42 U.S.C. § 10806(b)(3)(A).

The Department argued that the term "all records of . . . any individual" is ambiguous and that the district court therefore had to defer to the regulatory interpretation promulgated by the United States Department of Health and Human Services ("HHS"), which provides that a P & A system may receive all records, including peer review reports, "except that nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees." 42 C.F.R. § 51.41(c)(4). Pursuant to this regulation, the Department asserted, PAIMI did not preempt Connecticut's peer review privilege law and thus did not require release of the peer review records.

The District Court for the District of Connecticut (Dominic J. Squatrito, Judge) granted OPA's motion for summary judgment. Following the reasoning of the Third and Tenth Circuits in their treatment of this issue, the district court concluded that the grant of access in § 10805(a)(4) to "all records of . . . any individual" unambiguously includes peer review records relating to a particular individual's care. *Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Kirk*, 354 F.Supp.2d 196, 201–02 (D.Conn. 2005). Accordingly, the court did not defer to the regulatory interpretation pro-

mulgated by HHS. Finally, the court held that PAIMI preempts Connecticut's law governing the use of peer review records in civil actions. *Id.* at 202. The district court then entered an injunction requiring the Department to provide OPA with the peer review records relating to Cinami's and Bell's care on or before March 11, 2005. *Id.* at 202–03. That order was stayed pending this timely appeal.

On appeal, the Department argues that the district court erred in concluding that § 10805(a)(4) unambiguously requires it to disclose peer review records to OPA. It asserts that §§ 10805–06 do not expressly provide access to peer review records and that the statutory language is ambiguous. Accordingly, it contends, this Court must defer to HHS's reasonable interpretation of the statute.

## DISCUSSION

■ This Court reviews a district court's grant of summary judgment *de novo. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 625 (2d Cir.2005). Moreover, questions of statutory interpretation and "the appropriate level of deference to accord agency regulations [are] ... purely of law, subject to *de novo* review." *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 54 (2d Cir.2004) (citation and internal quotation marks omitted).

### I

Two PAIMI provisions granting OPA access to patient records are at issue here. Section 10805(a) provides that a P & A system such as OPA:

> shall ... (4) in accordance with section 10806 of this title, have access *to all records of*-
>
> (A) any individual who is a client of the system if such individual, or the

legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;

> (B) any individual (including an individual who has died or whose whereabouts are unknown)-(i) who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access; (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and (iii) with respect to whom a complaint has been received by the system or ... there is probable cause to believe that such individual has been subject to abuse or neglect; and
>
> (C) any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy ....

42 U.S.C. § 10805(a) (emphasis added). Section 10806 then provides:

> As used in this section, the term "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

*Id.* § 10806(b)(3)(A). The other subsections of § 10806 govern when the P & A system must maintain the records in confidence and when disclosure to the subject of the records, *i.e.*, the patient at the hos-

pital or facility, is prohibited. *See id.* § 10806(a)-(b)(2).

In 1991, Congress reauthorized and amended PAIMI. *See* Protection and Advocacy for Mentally Ill Individuals Amendments Act of 1991, Pub.L. No. 102–173, 105 Stat. 1217 (Nov. 27, 1991). None of the 1991 amendments made any changes to the statutory provisions at issue here. Congress did require, however, that "[n]ot later than 6 months after the date of enactment of this subsection, the Secretary [of HHS] shall promulgate final regulations to carry out this title." *Id.* § 9(2), 105 Stat. at 1219 (codified as amended at 42 U.S.C. § 10826(b)). The Secretary of HHS subsequently issued final regulations that provide, *inter alia,* that a P & A system shall have access to all records of an individual, including:

> Reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, as well as related assessments prepared for the facility by its staff, contractors or related entities, *except that nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees.*

42 C.F.R. § 51.41(c)(4) (emphasis added).

## II

Our analysis begins with the text of the statute. The first question is whether the plain language of PAIMI unambiguously grants OPA access to peer review records. If it does, our inquiry ends, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778; *Wachovia Bank, N.A. v. Burke,* 414 F.3d 305, 315 (2d Cir.2005). An agency interpretation is reasonable if it is "rational and consistent with the statute." *Sullivan v. Everhart,* 494 U.S. 83, 89, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990) (quotation marks and citation omitted).

■ OPA argues that the statutory language of PAIMI, on its face, gives it access to the peer review records at issue here. PAIMI provides that a P & A system such as OPA shall have access, in accordance with § 10806, to "all records of ... any individual" whose records it has permission or statutory authority to obtain. 42 U.S.C. § 10805(a)(4). Section 10806 provides that the term "records" includes "reports prepared by any staff of a facility rendering care and treatment." *Id.* § 10806(b)(3)(A). The peer review records the Department has withheld are reports prepared by and for the peer review committees of each of the hospitals. Accordingly, OPA argues, peer review records are "records" for purposes of § 10806(b)(3)(A) and must be disclosed to OPA.

The Department contends that PAIMI is not so straightforward. It notes that PAIMI does not explicitly refer to peer review records and that the statutory requirement of § 10805(a)(4) that a P & A system have access to "all records of ... any individual" is ambiguous and open to interpretation. The Department argues that the phrase "records of any individual" could mean either the records that belong to the individual or the records that relate to the individual. Because "of" is susceptible to both meanings, it asserts, the statutory language is ambiguous and this Court must therefore defer to HHS's reasonable regulatory interpretation.

Two other courts of appeal have considered the question whether PAIMI requires the disclosure of peer review reports and held that PAIMI's reference to "all records" unambiguously includes peer review records. *See Ctr. for Legal Advocacy v. Hammons,* 323 F.3d 1262 (10th Cir.2003); *Pa. Prot. & Advocacy, Inc. v. Houstoun,* 228 F.3d 423 (3d Cir.2000) (Alito, J.). In *Houstoun,* the Third Circuit held that the plain language of § 10806(b)(3)(A) encompasses peer review records because they are " 'reports prepared by ... staff of a facility rendering care and treatment' " and thus must be disclosed to a P & A system.[2] *Id.* at 426 (quoting 42 U.S.C. § 10806(b)(3)(A)). The defendant in that case argued that peer review reports are not records "of any individual" because they belong to the hospital and not the patient. *Id.* at 427. The court rejected this reading, noting that the term "of" may "be used to show connection or association, as well as ownership, and it seems clear that term is used in the former sense here." *Id.* (citation omitted). As the court concluded, "[p]resumably, many, if not all, of [the hospital's] other records concerning [the patient] are just as much its property as the peer review reports, but there is no doubt that [PAIMI] was meant to require the hospital to give [Pennsylvania Protection & Advocacy] access to those records, as the hospital did." *Id.*

Relying on the same reasoning as the Third Circuit, the Tenth Circuit also held that peer review reports constitute "records" within the meaning of § 10806(b)(3)(A). *Hammons,* 323 F.3d at 1270. The court began its analysis "by noting that the statutory phrase 'all records of ... any individual' is quite broad."

*Id.* It then rejected the argument that "all records" refers only to patient records, not hospital records, explaining that the word "of" "need not be read so narrowly" and that "a rational reading is that it refers to records pertaining to or relating to an individual." *Id.*

We agree with the reasoning of the Third and Tenth Circuits that PAIMI's language is clear. For a statute to be ambiguous, alternative dictionary definitions of a word must each make sense within the language and structure of the statute. *See Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 418, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) (holding that "[t]he existence of alternative dictionary definitions ... each making some sense under the statute" indicates that a statute is ambiguous); *see also MCI Telecomms. Corp. v. Am. Tel. & Telegraph, Co.,* 512 U.S. 218, 226, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994) (noting that the *Boston & Maine* "opinion did not rely exclusively upon dictionary definitions, but also upon contextual indications" and rejecting the argument that "courts must defer to the agency's choice among available dictionary definitions"). Here, the definition of the word "of" that indicates possession or ownership would render a significant part of § 10806(b)(3)(A) a nullity. The term "records" is defined broadly to include reports prepared by any staff of the facility, reports prepared by investigative agencies, and discharge planning records. The Department does not attempt to argue that patients have an ownership relationship to all of these types of records. Hence, we join our sister circuits in concluding that, in this context, "of" means

**2.** The court noted also that peer review reports might well be considered "reports prepared by an agency charged with investigating reports incidents of abuse, neglect, and injury occurring at such facility,"

10806(b)(3)(A), but did not decide the question because "it is apparent that the peer review reports fall within the [first] portion of the statutory definition." *Houstoun,* 228 F.3d at 426 n. 2.

relating to or in respect to an individual, *see* Webster's Third New International Dictionary 1565 (1986), and that the multiple dictionary definitions of the word "of" do not render the statutory language at issue ambiguous.

The Department next argues that the fact that the New Hampshire Supreme Court upheld HHS's regulatory interpretation of §§ 10805 and 10806 in *Disabilities Rights Center, Inc. v. Commissioner,* 143 N.H. 674, 732 A.2d 1021 (N.H.1999), indicates that the statutory language is susceptible to multiple interpretations and is thus ambiguous. In *Disabilities Rights Center,* however, the court did not consider whether the statutory language is ambiguous. Instead, it relied on 42 C.F.R. § 51.41 without considering whether the regulation is a valid exercise of HHS's rule-making authority. *See id.* at 1023–24. Without any discussion of the two-step analysis in *Chevron,* the court noted that HHS "has implemented a rule clarifying the definition of 'records.'" *Id.* at 1023. It then considered the House report that discussed the 1991 amendments and concluded that Congress did not intend to preempt New Hampshire law protecting peer review records. *See id.* at 1023–24. Thus, while the New Hampshire court arrived at a different result than the Third and Tenth Circuits, its decision does not suggest that the statutory language is ambiguous.

The Department also argues that legislative history of the 1991 reauthorization of PAIMI support the conclusion that §§ 10805(a)(4) and 10806(b)(3)(A) leave open the question of whether PAIMI requires the production of peer review records when state law protects them from disclosure. In particular, the Department relies on certain remarks in the legislative history concerning preemption. We discuss preemption in the next section but we explain here why the legislative statements concerning preemption do not persuade us to find ambiguity in the statute on the question of access to peer review records.

The issue of access to peer review records was raised in both the House and Senate Committee Reports. The House Report stated:

> The Committee recognizes that almost all hospitals have established medical care evaluation or peer review committees as part of their Joint Commissions on Accreditation of Health Care Organizations (JCAHO) accreditation requirements. The purpose of these committees is to review and evaluate patient care in the facility in order to improve the quality of care.

> The Committee has been made aware that 46 states have statutes that protect the records produced by such committees from disclosure. It is the Committee's intent that the [PAIMI] Act does not preempt State law regarding disclosure of peer review/medical review records relating to the proceedings of such committees.

H.R.Rep. No. 102–319, at 6 (1991), *reprinted in* 1991 U.S.C.C.A.N. 777, 782. The Senate Report summarized testimony from various witnesses before the committee, including Dennis R. Jones, the commissioner of the Texas Department of Mental Health and Mental Retardation. S. Rep. 102–114 (1991), 1991 WL 142023, at *3–4. Commissioner Jones testified about "the need to include report language clarifying access to peer review records" and explained that if P & A systems had access to peer review reports it "would reduce the candor about the quality of care by peers." *Id.* at *3. Despite these references to avoiding preemption of state statutes protecting peer review records from disclosure, Congress did not amend the lan-

guage of § 10805(a)(4) or § 10806(b)(3)(A) to implement that goal.

As we recently noted, whether courts may consider legislative history at the first step of the *Chevron* analysis has been the subject of mixed messages from the Supreme Court. *See Sash v. Zenk*, 428 F.3d 132, 137 n. 5 (2d Cir.2005). Even were we to consider the statements made in the committee reports from the 1991 reauthorization, however, they would not lead us to conclude that the statutory language at issue is ambiguous.

First, the statements in the committee reports conflict with the clear preference for preemption in PAIMI's text. PAIMI provides that if state law prohibits the disclosure of "all records" to a P & A system required by §§ 10805(a)(4) and 10806, neither section shall apply until the state law changes or "the expiration of the 2–year period beginning on May 23, 1986, whichever occurs first." 42 U.S.C. § 10806(b)(2)(C). This language clearly reflects Congress's intent to preempt all state laws that did not allow for the disclosure of records as described in § 10805(a)(4) after May 23, 1988. The Tenth Circuit has also concluded that this section, which the 1991 amendments did not alter, provides a clear indication that Congress did not intend state laws prohibiting disclosure of records to P & A systems to survive PAIMI. *See Hammons*, 323 F.3d at 1272.

Second, the desire to avoid preempting state law expressed in the committee reports is at odds with the intent expressed in the statutory text giving P & A systems access to "all records of . . . any individu-al," 42 U.S.C. § 10805(a)(4), including reports "prepared by any staff of a facility rendering care and treatment." *Id.* § 10806(b)(3)(A). As the Third Circuit explained: "[PAIMI] requires that [P & A systems] be given access to a defined category of records. Peer review reports either fall within that definition or they do not. The statutory language cannot reasonably be construed to encompass identical peer review reports in some states but not others." *Houstoun*, 228 F.3d at 428.

Finally, the Department asserts that § 10806(b)(3)(A) should be read to refer only to reports that are factual in nature and that "describe incidents of abuse, neglect, and injury occurring at such facility." Because peer review records contain analysis and evaluation, it argues, they are not the type of records contemplated by § 10806(b)(3)(A). This argument depends on a tortured reading of the statutory language. Section 10806(b)(3)(A) provides that the term records includes "reports prepared by any staff of a facility rendering care and treatment *or* reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility *and* . . . discharge planning records." 42 U.S.C. § 10806(b)(3)(A) (emphasis added). Thus, the definition of "records" in § 10806(b)(3)(A) is not limited in the way the Department suggests and includes both reports prepared by staff of a facility and reports prepared by an investigative agency describing incidents of abuse.[3]

---

**3.** *Amicus curiae* the Connecticut Hospital Association, Inc. ("CHA") also reads the definition of "records" in § 10806(b)(3)(A) to exclude peer review records, but its reading similarly depends on a distortion of the plain language. CHA argues that peer review records fall outside the statutory definition of records because they are not "records prepared by . . . staff . . . rendering care and treatment." It reads § 10806(b)(3)(A), which provides that the term records includes "reports prepared by any staff of a facility rendering care and treatment," to mean that reports are only records within the meaning

\* \* \*

In sum, we join our sister circuits in holding that the plain language of PAIMI that grants OPA access to "all records of . . . any individual," including "reports prepared by any staff of a facility," encompasses peer review reports. Because we conclude that Congress has clearly spoken to the question of whether OPA may have access to Cinami and Bell's peer review records, we do not proceed to the second step of the *Chevron* analysis to determine whether the regulatory interpretation is a permissible construction of the statute. Where, as here, Congress has unequivocally expressed its intent, the statute controls. *See, e.g., Gen. Dynamics Land Sys., Inc. v. Cline,* 540 U.S. 581, 600, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) ("[D]eference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent.").

### III

We must next consider whether PAIMI preempts Connecticut law in this area. "In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (internal citations and quotation

marks omitted); *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 641 (2d Cir.2005).

As noted, Connecticut protects peer review records from discovery. Specifically, Connecticut law provides:

The proceedings of a medical review committee conducting a peer review shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to the content of such proceedings . . . .

Conn. Gen.Stat. § 19a–17b(d) (2003). Thus, the disclosure of peer review records is not absolutely prohibited, but prohibited only in the context of a civil action against a health care provider in certain circumstances.

In this case, OPA sought the peer review records as part of a statutorily authorized investigation, not a civil action arising out of the subject of the peer review proceedings. OPA contends that a statutorily authorized investigation is not a civil action and thus there is no conflict between PAIMI and Connecticut law. This view finds support in *Commissioner of Health Services v. Kadish,* 17 Conn.App. 577, 554 A.2d 1097, 1099 (Conn.App.1989). In that case, the court considered whether Connecticut General Statute § 38–19a(d),[4]

---

of PAIMI if they are prepared by staff who specifically provide care and treatment. CHA asserts that, by definition, peer review reports are not prepared by the staff members who provided care and treatment to the individual and thus do not have to be disclosed to a P & A system. We read the phrase "rendering care and treatment" to modify "facility," not "staff." In other words, "any staff of a facili-

ty rendering care and treatment" means "any staff at a facility that renders care and treatment" not "any staff who render care or treatment at a facility."

4. Section 38–19a(d) contained the same language as the statute at issue here. *See Kadish,* 554 A.2d at 1098 n. 3.

a predecessor to § 19a–17b(d), prohibited the release of peer review documents to the Connecticut Health Commissioner, who was investigating a dentist for possible violations of his professional license. 554 A.2d at 1098. The state appellate court held that § 38–19a(d) did not bar the disclosure of the documents because an investigation by the health commissioner is not a civil action within the meaning of § 38–19a(d). *Id.* at 1099.

The Department attempts to distinguish *Kadish,* arguing that because OPA, unlike the Department of Health, is statutorily authorized to bring civil actions on behalf of clients, § 19a–17b(d) would nonetheless bar the disclosure of the peer review document. This distinction is unpersuasive. The text of § 19a–17b(d) does not prohibit the disclosure of peer review records generally but only in a specific situation: during discovery in a civil action against a health care provider arising out of matters that are the subject of the peer review.

The question whether OPA could use documents it obtained in an investigation under PAIMI as evidence in a civil action is not before this Court. We note, however, that the Department's concerns in this regard appear misplaced. PAIMI requires that a P & A system that obtains records under § 10805(a)(4) "which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services, shall," with an exception not relevant here, "maintain the confidentiality of such records to the same extent as is required of the provider of such services." 42 U.S.C. § 10806(a). It appears, therefore, that if a

provider could not disclose peer review records under Connecticut law in discovery, neither could OPA.[5] Moreover, nothing in the language of PAIMI pointed to by OPA appears to require the admission at trial of records obtained under § 10805(a)(4).

In the circumstances presented in this case, we do not see an actual conflict between PAIMI and Connecticut law. Nevertheless, the Department insists that one exists. To the extent that there is a conflict, PAIMI governs.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

**5.** The House Committee may have been referring to this confidentiality provision in stating that Congress did not intend to displace state law protecting peer review documents in civil suits. *See* H.R.Rep. No. 102–319, at 6 (1991), *reprinted in* 1991 U.S.C.C.A.N. 777, 782.