Merrimack
No. 97-282

DISABILITIES RIGHTS CENTER, INC.

v.

COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS & a.

June 29, 1999

*Disabilities Rights Center, Inc.*, of Concord (*Ronald K. Lospennato* and *Sheila Zakre* on the brief, and *Ms. Zakre* orally), for the plaintiff.

*Philip T. McLaughlin*, attorney general (*Daniel J. Mullen*, senior assistant attorney general, on the brief and orally), for the defendants.

*New Hampshire Legal Assistance*, of Portsmouth (*Alan Linder* on the brief), for National Association of Protection and Advocacy Systems, as *amicus curiae*.

HORTON, J. The plaintiff, Disabilities Rights Center, Inc., filed a petition in superior court under New Hampshire's Right to Know Law, *see* RSA ch. 91-A (1990); the Protection and Advocacy for Mentally Ill Individuals Act (PAMII), *see* 42 U.S.C. §§ 10801 *et seq.* (1994); and 42 U.S.C. § 1983 (1994), seeking access to records of the New Hampshire State Prison's Secure Psychiatric Unit (SPU). The Superior Court (*Brennan*, J.) ordered the defendants, the commissioner of the department of corrections and the administrative director of the SPU, to disclose quality assurance records, and denied the plaintiff's request for attorney's fees. The defendants appeal the order to disclose quality assurance records; the plaintiff appeals the denial of attorney's fees. We reverse in part, affirm in part, vacate in part, and remand.

The plaintiff is a non-profit corporation that operates in New Hampshire as a protection and advocacy group for the disabled. PAMII authorizes the plaintiff to "protect and advocate the rights of individuals with mental illness" and "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10803(2); *see also* 42 U.S.C. §§ 10801(b), 10805(a)(1). Under PAMII, protection and advocacy groups may have access to the records of mentally ill individuals. *See* 42 U.S.C. § 10805(a)(4).

The SPU is a secure psychiatric and medical services facility located at the New Hampshire State Prison and administered by the

department of corrections. The SPU has a quality assurance program, which in 1990 was rated noncompliant with quality assurance standards set by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO). In 1994, a psychiatrist was commissioned by the New Hampshire Division of Mental Health and Developmental Services to conduct an audit of the SPU. The psychiatrist criticized the quality of care provided at the SPU, and the plaintiff eventually obtained a copy of the audit report. Based on the report and other referrals, the plaintiff determined that there was probable cause to investigate the SPU for neglecting its residents.

The plaintiff unsuccessfully sought access to various records in the course of its investigation and eventually brought suit to compel disclosure. Three weeks after the plaintiff filed its petition, the department of corrections released the records the plaintiff had requested, except quality assurance records and certain safety and security records.

The trial court, relying on RSA 151-D:2 (1996), ruled that the plaintiff was not entitled to obtain the SPU's quality assurance records under New Hampshire law. The court, however, ruled that PAMII authorized the plaintiff's access. The court denied the plaintiff's claim for attorney's fees, finding that the defendants' "position in this matter was not unreasonable." This appeal followed.

*I. Preemption*

■ The defendants argue that the court erred in concluding that PAMII preempts RSA 151-D:2. State law is preempted under the Supremacy Clause of the United States Constitution where: (1) Congress expresses an intent to displace state law; (2) Congress implicitly supplants state law by granting exclusive regulatory power in a particular field to the federal government; or (3) state and federal law actually conflict. *See Mason v. Smith,* 140 N.H. 696, 699, 672 A.2d 705, 706-07 (1996). The goal of preemption analysis is to discern the intent of Congress. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992). We "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Tebbetts v. Ford Motor Co.,* 140 N.H. 203, 205, 665 A.2d 345, 346 (1995) (quotation omitted), *cert. denied,* 516 U.S. 1072 (1996). We also bear in mind that preemption language in a federal statute should be read in context and interpreted narrowly. *See*

*Tebbetts*, 140 N.H. at 208, 665 A.2d at 347; *Cipollone*, 505 U.S. at 518-19.

RSA 151-D:2 provides that "[r]ecords of an ambulatory care clinic's quality assurance program . . . shall be confidential and privileged and shall be protected from direct or indirect means of discovery, subpoena, or admission into evidence in any judicial or administrative proceeding." Considering a similar confidentiality statute, we found that the quality assurance privilege was meant to advance the general public interest in promoting vigorous self-criticism, which leads to improvements in health care services. *In re "K"*, 132 N.H. 4, 10, 561 A.2d 1063, 1067 (1989) (interpreting RSA 151:13-a (1996)).

Section 10805(a)(4) of PAMII grants protection and advocacy groups access to the records of certain mentally ill individuals. PAMII further provides that

> [i]f the laws of a State prohibit an eligible system from obtaining access to the records of individuals with mental illness in accordance with section 10805(a)(4) of this title and this section, section 10805(a)(4) of this title and this section shall not apply to such system before — (i) the date such system is no longer subject to such a prohibition; or (ii) the expiration of the 2-year period beginning on May 23, 1986, whichever occurs first.

42 U.S.C § 10806(b)(2)(C). A statutory provision nearly identical to section 10806(b)(2)(C) has been held to constitute language of preemption. *See W.Va. Advocates v. A.C.H.C.*, 447 S.E.2d 606, 611-12 (W. Va. 1994). Protection and advocacy groups therefore have access to the "records" of certain mentally ill individuals notwithstanding state laws to the contrary. *See* 42 U.S.C. § 10806(b)(2)(C)(ii).

The plaintiff argues that the SPU's quality assurance records fall under the definition of "records," and thus PAMII preempts RSA 151-D:2.

> [T]he term "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

42 U.S.C. § 10806(b)(3)(A). The United States Department of Health and Human Services has implemented a rule clarifying the

definition of "records." The rule provides that "nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees." 42 C.F.R. § 51.41(c)(4) (1998). As RSA 151-D:2 is just such a law, the rule is reflective of Congress' intent to spare it from preemption. *Cf. Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255 & n.17 (1984) (regulations may reflect legislative intent).

We next consider the pertinent legislative history to determine Congress' intent. *See Tebbetts*, 140 N.H. at 207, 665 A.2d at 347. The legislative history of PAMII states that Congress did not intend to preempt state laws protecting the records maintained by "medical care evaluation or peer review committees" that are established by hospitals to achieve accreditation by the JCAHO. *See* H.R. REP. No. 102-319, 102d Cong., 1st Sess. (1991), *reprinted in* 1991 U.S.C.C.A.N. 777, 782. The record indicates that the SPU, like the hospitals referenced in the foregoing legislative history, must maintain an adequate quality assurance program in order to fulfill its goal of obtaining JCAHO accreditation.

■ The plaintiff reads the legislative history narrowly, arguing that Congress intended to spare from preemption only state laws that protect the work product of hospital quality assurance programs. The plaintiff argues that the SPU is not a hospital. The question whether the SPU is a hospital is not determinative of preemption. We see no reason for Congress to have preserved only state laws protecting hospital quality assurance records when other health care providers, such as the SPU, implement quality assurance programs, under the protection of similar confidentiality statutes, in order to obtain JCAHO accreditation and further the public interest. We conclude that the legislative history of PAMII indicates that Congress did not intend to preempt RSA 151-D:2.

■ The plaintiff next argues that PAMII implicitly preempts RSA 151-D:2 because the two statutes are in actual conflict. "An actual conflict exists when it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishments and execution of the full purpose and objective of Congress." *Wenners v. Great State Beverages*, 140 N.H. 100, 104, 663 A.2d 623, 626 (1995) (quotation omitted). Since Congress has expressed an intent to avoid preempting state laws protecting the quality assurance records of medical care facilities, there is no conflict between PAMII and RSA 151-D:2.

Finally, it is significant that PAMII and RSA 151-D:2 serve a similar end. Both statutes benefit mentally ill individuals by foster-

ing the improvement of services and conditions at medical and psychiatric care facilities. Were we to find preemption, the SPU would no longer be encouraged to engage in self-critical review and the mentally ill individuals receiving services there would no longer benefit from the improvements that flow from its quality assurance program. In this sense, preemption would create a result contrary to the basic congressional purpose that underlies PAMII. We are "generally reluctant to infer preemption, and it would be particularly inappropriate to do so in this case because the basic purposes of [RSA 151-D:2] and [PAMII] are similar." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 132 (1978) (citations omitted).

*II. Quality Assurance Privilege*

The plaintiff argues that even if PAMII does not preempt RSA 151-D:2, the latter does not bar the plaintiff from obtaining access to the SPU's quality assurance records because the SPU is not an "ambulatory care clinic," RSA 151-D:1, I (1996), and the privilege prevents only litigants from accessing records. The plaintiff essentially challenges the trial court's ruling that the SPU's quality assurance records are privileged and confidential under New Hampshire law.

RSA 151-D:2 establishes the confidentiality of quality assurance records maintained by "ambulatory care clinics," which by definition include "medical facilities operated by the division of medical and psychiatric services, department of corrections." RSA 151-D:1, I. The SPU is a facility operated by the department of corrections, division of medical and psychiatric services, to provide medical, psychiatric, and other services to patients. *See* RSA 21-H:4, IV (Supp. 1998); RSA 622:43, I (Supp. 1998). The SPU, therefore, is an "ambulatory care clinic."

The plaintiff's assertion that RSA 151-D:2 applies only to litigants is unpersuasive. Quality assurance records "shall be protected from direct or indirect means of discovery." RSA 151-D:2, I. PAMII empowers the plaintiff to seek redress in the administrative agencies and courts of this State on behalf of the mentally ill. That the plaintiff, an advocate by definition, seeks to discover the SPU's quality assurance records by a means other than the formal discovery process is not dispositive. We conclude that under New Hampshire law the plaintiff was not entitled to obtain access to the SPU's quality assurance records.

*III. Attorney's Fees*

We next consider the plaintiff's argument that the court erred in denying its claim for attorney's fees. 42 U.S.C. § 1988 permits an award of attorney's fees to a party that prevails on a claim asserted through 42 U.S.C. § 1983. *See* 42 U.S.C. § 1988(b) (1994). The plaintiff, in its petition below, pleaded section 1983 and requested attorney's fees. The court denied fees on the ground that the defendants' "position was not unreasonable." Such a finding might provide a sufficient basis to deny an award of attorney's fees under the Right-to-Know Law. *See* RSA 91-A:8, I. Section 1988, however, permits an award of attorney's fees to a prevailing party despite the reasonableness of the losing party's conduct. *See* 42 U.S.C. § 1988(b); *Coalition for Basic Human Needs v. King*, 691 F.2d 597, 602 (1st Cir. 1982).

The plaintiff asserts that it qualifies as a "prevailing party" since it succeeded on the merits of the PAMII Act claim. The defendants argue that the plaintiff is not entitled to attorney's fees because the court's disclosure order was erroneous, the court did not award relief under section 1983, and PAMII creates no enforceable rights in the plaintiff.

Our review of PAMII convinces us that it creates enforceable rights in the plaintiff. *See* 42 U.S.C. §§ 10805(a), 10807; *cf. Rubenstein v. Benedictine Hosp.*, 790 F. Supp. 396, 407-09 (N.D.N.Y. 1992). Because we find no federal preemption and reverse the superior court's disclosure order, however, the plaintiff did not prevail in its attempt to obtain the SPU's quality assurance records and cannot recover the attorney's fees incurred in that effort. *See Globe Newspaper Co. v. Beacon Hill Architectural*, 100 F.3d 175, 195 (1st Cir. 1996). Further, the plaintiff does not claim attorney's fees in connection with the defendants' voluntary disclosure of other records prior to judgment, *see Langton v. Johnston*, 928 F.2d 1206, 1224-25 (1st Cir. 1991), and therefore any claim for such fees is deemed waived.

The plaintiff contends that it prevailed in its effort to obtain safety records, exclusive of those safety records relating solely to security at the SPU. We cannot discern from the court's order whether or not the court ordered the defendants to disclose records other than quality assurance records. If such relief was granted, the order does not indicate whether it was granted pursuant to section 1983 or under the Right-to-Know Law.

▇▇ In view of the foregoing, we vacate the court's order denying attorney's fees and remand for resolution of these issues. If the

court determines that the defendants were obligated to disclose safety records, it shall determine in accordance with the appropriate statutory provision whether the plaintiff is entitled to an award of reasonable attorney's fees for achieving that result.

As our determinations are dispositive of this appeal, we need not address the parties' remaining arguments.

*Reversed in part; affirmed in part; vacated in part; remanded.*

All concurred.