

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2000

# PA Protection & Advocacy, Inc. v. Houstoun

Precedential or Non-Precedential:

Docket 99-1969

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"PA Protection & Advocacy, Inc. v. Houstoun" (2000). *2000 Decisions.* Paper 211.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/211

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 3, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1969

PENNSYLVANIA PROTECTION & ADVOCACY, INC.

v.

FEATHER HOUSTOUN, IN HER OFFICIAL CAPACITY
AS SECRETARY OF THE DEPARTMENT OF PUBLIC
WELFARE OF THE COMMONWEALTH

OF PENNSYLVANIA;

CHARLES CURIE, IN HIS OFFICIAL CAPACITY AS
DEPUTY SECRETARY OF THE OFFICE OF MENTAL
HEALTH OF THE DEPARTMENT OF PUBLIC WELFARE

OF THE COMMONWEALTH OF PENNSYLVANIA;

GREGORY M. SMITH, IN HIS OFFICIAL CAPACITY
AS THE SUPERINTENDENT OF ALLENTOWN
STATE HOSPITAL,
        Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 98-cv-04180)

District Court Judge: J. Curtis Joyner

Argued May 23, 2000

Before: ALITO and RENDELL, Circuit Judges, and DUHE,
Senior Circuit Judge.*
_____

* The Honorable John M. Duhe, Jr., United States Court of Appeals for
the Fifth Circuit, sitting by designation.

(Opinion Filed: October 3, 2000)

James M. Sheehan, General Counsel
John A. Kane, Chief Counsel
Howard Ulan, Senior Asst. Counsel
 (argued)
 Department of Public Welfare
 Office of Legal Counsel
 3rd Floor West Health and Welfare
 Building
 Harrisburg, PA 17120

 Attorneys for Appellants

David M. Allen
 Schuyler, Roche & Zwirner
 130 East Randolph Street
 Suite 3800
 Chicago, IL 60601

 Attorney for Amicus-Appellant

Mark J. Murphy (argued)
 Disabilities Law Project
 1901 Law & Finance Building
 429 Fourth Avenue
 Pittsburgh, PA 15219

Ilene W. Shane
Robin Resnick
 Disabilities Law Project
 801 Arch Street, Suite 610
 Philadelphia, PA 19107-2421

 Attorneys for Appellee

S. Paul Prior
 New Jersey Protection & Advocacy,
 Inc.
 210 South Broad Street, 3rd Floor
 Trenton, NJ 08608

 Attorney for Amicus-Appellee

2

OPINION OF THE COURT

ALITO, Circuit Judge:

In 1986, Congress enacted the Protection and Advocacy for Mentally Ill Individuals Act (PAMII), Pub. L. No. 99-319, 100 Stat. 478 (codified at 42 U.S.C. SS 10801-10905). The Act provides funding for the states to establish independent organizations (referred to in the Act as "eligible systems") that monitor and protect the rights of the mentally ill. See 42 U.S.C. S 10803. These organizations are intended to "investigate incidents of abuse and neglect of individuals with mental illness" and to take appropriate action to "protect and advocate the rights of such individuals." 42 U.S.C. S 10801(b). Congress found that funding was needed for such organizations because the mentally ill were vulnerable to abuse, injury, and neglect and because the states' response to these problems was often inadequate. See 42 U.S.C. S 10801(a).

Pennsylvania Protection & Advocacy, Inc. (PP & A) is a Pennsylvania non-profit corporation that is qualified as an "eligible system" under PAMII. Dolores L. attempted suicide while a mental patient at Allentown (Pennsylvania) State Hospital and, she died five days later. In accordance with Allentown State Hospital policy and requirements of the Joint Commission on the Accreditation of Healthcare Organizations, the supervisor of the hospital appointed two peer review committees to evaluate the circumstances of Dolores L.'s death. These committees produced reports (peer review reports) intended to identify any mistakes that were made and that could have been avoided and any changes that could be made in the hospital's policy or practices so as to reduce the likelihood of similar events in the future. PP & A requested Dolores L.'s records, but the hospital refused to turn over the peer review reports. PP & A then filed this action against the responsible Pennsylvania officials (the Commonwealth) to challenge the refusal to permit access to the peer review reports. The District Court held that the reports must be disclosed. We affirm.

3

I.

The first issue in this case is whether the peer review reports fall within the scope of S 10805 of PAMII, which provides that an organization such as PP & A shall,"in accordance with section 10806 of this title, have access to all records of . . . any individual who is a client of the" advocacy organization. 42 U.S.C. S 10805(a)(4)(A)(emphasis added). The District Court held that the peer review reports fall within this language, and we agree.

The peer review reports certainly constitute "records" in the ordinary sense of the term, and they also fall squarely within the definition provided in Section 10806 of the Act, which states:

> [T]he term "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents . . . .

42 U.S.C. S 10806(b)(3)(A).1

The plain language of this definition encompasses the peer review reports at issue here, since they are clearly "reports prepared by . . . staff of a facility rendering care and treatment." Id. Allentown State Hospital is "a facility rendering care and treatment," and the reports were prepared by committees composed of members of the hospital's "staff."2 See J.A. 21a–23a. Therefore, the

_____

1. We note that the definition of "records" is preceded in the statute by the language: "As used in this section[i.e., S 10806]." 42 U.S.C. S 10806(b)(3)(A) (emphasis added). Nevertheless, it is clear that the definition of "records" in S 10806 controls the types of records to which PA & A "shall have access" under S 10805 because S 10805 provides that an eligible system "shall . . . in accordance with section 10806 of this title, have access to" certain records. 42 U.S.C. S 10805(a)(4) (emphasis added). In addition, S 10806, which is entitled "Access to records," provides that "[a]n eligible system shall have access to the type of records described in subparagraph (A) [the definition of "records" in S 10806]." 42 U.S.C. S 10806(b)(3)(B) (emphasis added).

2. The peer review reports may also constitute"reports prepared by an agency charged with investigating reports of incidents of abuse, neglect,

4

definition of "records" encompasses Dolores L.'s peer review reports.

The Commonwealth asserts that S 10806(b)(3)(A) requires the disclosure of "incident reports," but not peer review reports. Appellant Br. at 7-8 ("Unlike incident reports, which are descriptive in nature, peer review reports involve high-order inferences evolving from professional analysis and evaluation . . . ."). However, the Commonwealth does not explain how this distinction fits the language of the statute; nor does the Commonwealth cite authority that supports its construction. The only authority that the Commonwealth offers, Atkins v. Pottstown Memorial Medical Center, 634 A.2d 258 (Pa. Super. Ct. 1993), is inapposite. In Atkins, the court merely held that incident reports are not shielded by the Pennsylvania statute that protects peer review reports from discovery. See id. at 260. Neither Atkins nor the statute that the court interpreted in Atkins has anything to do with PAMII.

The Commonwealth also asserts that a peer review report is not a record "of any individual" because the record belongs to the hospital. Appellant Br. at 7. However, the preposition "of " may be used to show connection or association, as well as ownership, see Random House Dictionary of the English Language 999 (1967), and it seems clear that the term is used in the former sense here. Presumably, many, if not all, of Allentown State Hospital's other records concerning Dolores L. are just as much its property as the peer review reports, but there is no doubt

_____

and injury occurring at such facility that describe[an] incident[ ] of abuse, neglect, [or] injury occurring at such facility and the steps taken to investigate such incident[ ]." 42 U.S.C. S 10806(b)(3)(A). Dolores L.'s peer review reports plainly describe, at a minimum, an "incident[ ] of . . . injury," namely, a suicide attempt, "and the steps taken to investigate such [an] incident[ ]." Id. Moreover, the peer review committees were indisputably "charged with investigating [a] report[ ] of [an] incident[ ] of abuse, neglect, [or] injury occurring at [the] facility." Id. Whether these committees composed of hospital staff are "agencies" within the meaning of the statutory definition is debatable, but we need not decide that question here, since it is apparent that the peer review reports fall within the portion of the statutory definition discussed in text.

5

that PAMII was meant to require the hospital to give PP & A access to those records, as the hospital did. Accordingly, we hold that a peer review report is a "record[ ] of . . . an[ ] individual" under PAMII. 42 U.S.C. S 10805(a)(4). Thus, under this provision, PP & A was entitled to have "access" to these records. Id.

II.

The Commonwealth argues that, even if the peer review reports are "records of . . . [an] individual" under PAMII, PAMII does not require that PP & A be given access to those records because, according to the Commonwealth, Pennsylvania restricts the disclosure of peer review reports. There is nothing in the text of PAMII, however, that supports the Commonwealth's contention that this federal statute does not require disclosure of peer review reports that are protected under state law. Indeed, there is not even any mention of peer review reports in the legislative history that accompanied the initial passage of the Act in 1986. See S. Rep. No. 99-109 (1985), reprinted in 1986 U.S.C.C.A.N. 1361; H.R. Conf. Rep. No. 99-576, reprinted in 1986 U.S.C.C.A.N. 1377.

The Commonwealth relies, however, on subsequent legislative history and a regulation issued to implement PAMII. Appropriations for PAMII expired in 1991 and were re-authorized that year. See Protection and Advocacy for Mentally Ill Individuals Amendments Act of 1991, Pub. L. No. 102-173, 105 Stat. 1217 (Amending Act). The House Report that accompanied the re-authorization stated that "[i]t is the Committee's intent that the PAMII Act does not preempt State law regarding disclosure of peer review/medical review records relating to the proceedings of such committees." H.R. Rep. No. 102-319, reprinted in 1991 U.S.C.C.A.N. 777, 782.

When Congress re-authorized PAMII, it provided that "the Secretary [of Health and Human Services] shall promulgate final regulations to carry out this title." Amending Act, S 9. Pursuant to this authority, 42 C.F.R. S 51.41(c) (1999) provides that "[i]nformation and individual records . . . which shall be available to the P&A system under the Act

6

shall include, but not be limited to . . . [r]eports prepared . . . by or for the facility itself, that describe .. . injury occurring at the facility . . . [and] [r]eports and records, . . . prepared or maintained by the facility, in connection with such reports of incidents." 42 C.F.R. S 51.41(c)(2). The regulation goes on to provide that "nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees." Id. S 51.41(c)(4)

The interpretation of PAMII set out in 42 C.F.R. S 51.41(c)(4) does not represent a reasonable interpretation of the statute, and we must therefore reject it. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843–44 (1984). As noted, PAMII requires that groups such as PP & A be given access to a defined category of records. Peer review reports either fall within that definition or they do not. The statutory language cannot reasonably be construed to encompass identical peer review reports in some states but not others. If Congress wished to achieve that result, it needed to enact different statutory language. It could not achieve that result, in the face of the statutory language it enacted, simply by inserting a passage in a committee report. Nor could that result be achieved by means of a regulation.

We thus hold that PAMII requires that an organization such a PP & A be given access to peer review reports such as those at issue here irrespective of state law. PAMII preempts any state law that gives a healthcare facility the right to withhold such records. See, e.g., Pacific Gas and Elec. Co. v. State Energy Resources Conservation and Development Comm'y, 461 U.S. 190, 204 (1983); Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142–43 (1963).

III.

Although PAMII would preempt a Pennsylvania law that prohibited the disclosure of the peer review reports to PP & A, we note that there is no conflict between state and federal law here because Pennsylvania law does not forbid such disclosure. See Pa. Stat. Ann. tit. 63S 425.4 (West

7

1996). Section 425.4 merely provides that "[t]he proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action ." Id. (emphasis added) Here, PP & A is seeking the peer review reports in order to fulfill the advocacy and investigatory purposes of PAMII with regard to Dolores L.'s death. PP & A is not seeking to discover the reports or to introduce them into evidence in a civil action.

Pennsylvania's requirement that a peer review report "be held in confidence" also does not prevent disclosure of the reports to PP & A. Id. The statute does not say who is required to keep the report in confidence, and the statute has not been interpreted to preclude reports from being shared with persons outside of a peer review committee. See Hayes v. Mercy Health Corp., 739 A.2d 114, 117–19 (Pa. 1999) (holding that peer review committee materials are not privileged from disclosure to a doctor mounting an internal challenge to a peer review committee's disciplinary recommendation). There is nothing in the Pennsylvania statute to support the inference that a peer review report must be kept "in confidence" from a state's independent advocacy organization. To the contrary, the inference to be drawn from the Pennsylvania statute's reference to a "civil action" is that the statute requires that peer review reports be kept out of the hands of lawyers involved in civil litigation. See id. at 118 ("Thus, the intent of the legislature, as revealed by the plain language of [the Pennsylvania statute] and confirmed by its legislative history, was to prevent the disclosure of peer review information to outside parties seeking to hold professional health care providers liable for negligence . . . .").

In addition, PAMII imposes a duty of confidentiality on the advocacy organizations themselves. See 42 U.S.C. S 10806(a) ("An eligible system which, pursuant to [PAMII], has access to records which, under . . . State law, are required to be maintained in a confidential manner by a provider of mental health services, shall, except as provided in subsection (b) of this section,3 maintain the

_____

3. Section 10806(b) provides for disclosure of records to the patient. In a civil action, the patient would still be precluded, by the same Pennsylvania statute, from discovering the report or from offering it into evidence. See Pa. Stat. Ann. tit. 63 S 425.4.

8

confidentiality of such records to the same extent as is required of the provider of such services." (emphasis added)); Robbins v. Budke, 739 F. Supp. 1479, 1488 (D.N.M. 1990) (noting that PAMII requires that an advocacy organization maintain confidentiality of records to the same degree as the health care provider). Since PAMII requires advocacy organizations themselves to maintain the confidentiality of peer review reports, disclosure of peer review reports to advocacy organizations is not precluded by the Pennsylvania statute.

IV.

For the reasons explained above, the judgment of the District Court is affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9