**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 27 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CENTER FOR LEGAL ADVOCACY
dba The Legal Center for People with
Disabilities and Older People aka The
Legal Center, Colorado's Protection
and Advocacy System, P&A System,

       Plaintiff - Appellant,

  v.

MARVA LIVINGSTON HAMMONS,
in her official capacity as Executive
Director of the Colorado Department
of Human Services; ROBERT B.
ROSSI, in his official capacity as
Manager, Office of Direct Services of
the Colorado Department of Human
Services; ROBERT L. HAWKINS, in
his official capacity as Superintendent
of the Colorado Mental Health
Institute at Pueblo; and COLORADO
MENTAL HEALTH INSTITUTE AT
PUEBLO,

       Defendants - Appellees.

---

NATIONAL ASSOCIATION OF
PROTECTION AND ADVOCACY
SYSTEMS,

       Amicus Curiae.

No. 01-1574

---

Mark J. Ivandick (Terry L. Fowler with him on the briefs), Denver, Colorado, for Plaintiff - Appellant.

Beverly Fulton, First Assistant Attorney General, Human Services Unit, State Services Section, Denver, Colorado (Ken Salazar, Attorney General, Denver, Colorado, with her on the brief), for Defendant - Appellee.

Sandra L. Gomez, Protection & Advocacy System, Inc., Albuquerque, New Mexico, and Gary P. Gross, National Association of Protection and Advocacy Systems, Washington, D.C., filed an amicus curiae brief for the National Association of Protection and Advocacy Systems.

Before **BRISCOE** , **ANDERSON** , and **LUCERO** , Circuit Judges.

**ANDERSON** , Circuit Judge.

This case involves the single issue of whether plaintiff, Center for Legal Advocacy ("CLA"), is entitled, under the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"), 42 U.S.C. §§ 10801-10851, to peer review and quality assurance records it seeks in connection with its investigation into the suicides and attempted suicide of mental health care patients, or whether such access is barred by Colorado statutes prohibiting access to such records. The district court held CLA was not entitled to those records. We reverse.

-2-

**BACKGROUND**

CLA is a non-profit Colorado corporation designated by the governor of Colorado as the state's Protection and Advocacy System ("P&A System") under the PAMII Act. Under the Act, P&A Systems like CLA are directed to "investigate incidents of abuse and neglect of individuals with mental illness," and to "protect and advocate the rights of such individuals." 42 U.S.C. § 10801(b)(2).

Defendant Colorado Mental Health Institute at Pueblo ("Institute") is a Colorado facility which treats individuals with mental illnesses. It is organized and operated under the Office of Direct Services of the Colorado Department of Human Services ("CDHS"). Defendant Robert Hawkins is the Institute's superintendent, defendant Robert Rossi is the manager of CDHS's Office of Direct Services, and defendant Marva Hammons is the executive director of CDHS.

After learning of the suicides of four patients at the Institute, and the attempted suicide of another Institute patient, CLA sought information under PAMII, including physician peer review and quality assurance/management materials, to assist in its investigation of those incidents. [1] PAMII authorizes P&A

---

[1] PAMII authorizes P&A Systems like CLA to "investigate incidents of abuse and neglect of individuals with mental illnesses if the incidents are reported (continued...)

Systems like CLA to have access to certain records in order to conduct its investigations into incidents involving mentally ill individuals. Colorado, however, has two statutes which bar disclosure of physician peer review and hospital "quality management" review records in certain situations. [2] Defendants eventually provided CLA with all records relating to the patients under investigation, but refused to turn over peer review and quality assurance records. [3]

---

[1](...continued)
to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a)(1)(A).

[2]Colo. Rev. Stat. § 25-3-109(4), concerning health care facility quality management review, provides as follows:

> The records, reports, and other information described in subsection (3) of this section shall not be subject to subpoena or discoverable or admissible as evidence in any civil or administrative proceeding. No person who participates in the reporting, collection, evaluation, or use of such quality management information with regard to a specific circumstance shall testify thereon in any civil or administrative proceeding.

Colorado's physician peer review provisions state, in relevant part, as follows:

> The records of a professional review committee, a governing board, or the committee on anticompetitive conduct shall not be subject to subpoena or discovery and shall not be admissible in any civil suit brought against a physician who is the subject of such records.

Colo. Rev. Stat. § 12-36.5-104(10)(a).

[3]Defendants have identified the records they refuse to turn over in their Fed. R. Civ. P. 26(b)(5) "Second Amended Privilege Log, and Submission of Documents Under Seal." These include both peer review materials and quality

(continued...)

CLA seeks a declaratory judgment and an injunction requiring access to peer review and quality assurance records relevant to the suicides and attempted suicide it was investigating at the Institute, as well as a permanent injunction for future cases, along with attorney's fees. [4] Plaintiff and defendants filed motions pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, and the matter was referred to a magistrate judge. The magistrate judge concluded that PAMII's disclosure requirements applied to the professional review records sought by CLA and recommended that defendants grant CLA access to them. The district court disagreed, concluding that PAMII does not compel the disclosure of the records at issue and does not preempt Colorado's statutes barring disclosure of them. It therefore held that CLA could not compel access to those records, and it accordingly vacated the magistrate judge's recommendation and dismissed CLA's claims. CLA appeals.

---

[3](...continued)
assurance materials.

[4]CLA also alleged a violation of its federal rights under 42 U.S.C. § 1983. The magistrate judge to whom this case was initially referred stated that the court "need not address [the § 1983 claim] because plaintiff has not alleged sufficient facts to sustain such a claim." Recommendation on Pl.'s Mot. for J. on the Pleadings at 19, Appellant's App. at 144. CLA objected to that recommendation. The district court dismissed all of CLA's claims, presumably including the § 1983 claim, without any discussion of the § 1983 claim and CLA's objection to the magistrate judge's treatment of the claim. On appeal, CLA develops no argument about the § 1983 claim, but simply asks us to remand it to the district court for consideration.

## DISCUSSION

We review *de novo* the entry of judgment on the pleadings. <u>Ramirez v. Dept. of Corrections</u>, 222 F.3d 1238, 1240 (10th Cir. 2000); <u>Bishop v. Fed. Intermediate Credit Bank of Wichita</u>, 908 F.2d 658, 663 (10th Cir. 1990). We also review *de novo* the district court's interpretation of a federal statute. <u>United States v. Quarrell</u>, 310 F.3d 664, 669 (10th Cir. 2002).

A brief history of PAMII is necessary to understand the arguments of each side in this case. PAMII was enacted in 1986. Section 10805 of the Act authorizes P&A Systems like CLA to "in accordance with section 10806 . . . have access to all records of . . . any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. § 10805(a)(4). [5] In 1988, PAMII was amended and reauthorized, and subsection (b)(3) to § 10806, providing a definition of "records," was added:

> As used in this section, the term "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe

---

[5]Subsections (a)(4)(B) and (a)(4)(C) of § 10805 authorize CLA access to records of "any individual" without that individual's authorization, or authorization by the individual's representative, where CLA finds probable cause to believe that the individual has been abused or neglected and is unable to provide authorization, or when the individual's representative has failed to take appropriate action to protect the individual. 42 U.S.C. § 10805(a)(1)(4) (B), (C).

incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

42 U.S.C. § 10806(b)(3)(A). Section 10806 further provides that:

> If the laws of a State prohibit an eligible system from obtaining access to the records of individuals with mental illness in accordance with section 10805(a)(4) of this title and this section, section 10805(a)(4) of this title and this section shall not apply to such system before–
> (i) the date such system is no longer subject to such a prohibition; or
> (ii) the expiration of the 2-year period beginning on May 23, 1986,
> whichever occurs first.

42 U.S.C. § 10806(b)(2)(C).

PAMII was again amended and reauthorized in 1991, although none of the 1991 amendments to the text of PAMII are relevant to this case. All parties agree that, prior to the 1991 amendments and reauthorization, the legislative history of the Act did not address the issue of access to peer review or quality assurance records. All parties also agree that the issue *was* raised during the 1991 reauthorization process. They disagree strongly on what, if anything, we should derive from those facts.

The mention of access to peer review records in connection with the 1991 amendment and reauthorization appeared in both the House and Senate Committee Reports:

The Committee recognizes that almost all hospitals have established medical care evaluation or peer review committees as part of their Joint Commissions on Accreditation of Health Care Organizations (JCAHO) accreditation requirements. The purpose of these committees is to review and evaluate patient care in the facility in order to improve the quality of care.

The Committee has been made aware that 46 states have statutes that protect the records produced by such committees from disclosure. It is the Committee's intent that the PAMII Act does not pre-empt State law regarding disclosure of peer review/medical review records relating to the proceedings of such committees.

H.R. Rep. No. 102-319, at 6 (1991), reprinted in 1991 U.S.C.C.A.N. 777, 782.

The Senate Report contains virtually identical language. However, the 1991 reauthorization bill, Senate Bill 1475, was passed by both the Senate and the House of Representatives with no discussion of access to peer review records, and no change relating to record access was actually made in the text of the Act when it was reauthorized. [6]

Additionally, when Congress reauthorized PAMII in 1991 it provided that "the Secretary [of Health and Human Services] shall promulgate final regulations to carry out this title." Protection and Advocacy for Mentally Ill Individuals Amendments Act of 1991, § 9, Pub. L. No. 102-173, 105 Stat. 1217 (1991). Pursuant to that authority, the United States Department of Health and Human

---

[6]The Committee Reports refer to peer review and "medical care evaluation" or "medical review" records. They do not reference "quality assurance" records, as such.

Services enacted a regulation which states that P&A Systems shall have access to the following:

> Reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, as well as related assessments prepared for the facility by its staff, contractors or related entities, except that nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees.

42 C.F.R. § 51.41(c)(4). Thus, this regulation arguably implemented the language contained in the Committee Reports, excluding from access under PAMII peer review or medical care evaluation materials which are privileged under state law. CLA argues this regulation is invalid because it directly conflicts with the clear intent of Congress as expressed in the text of the PAMII Act. Defendants argue it is a valid regulation and reflects Congressional intent expressed in 1991 when the PAMII Act was reauthorized.

CLA argues that the district court erred in denying it access to peer review and quality assurance records, contending: (1) it impermissibly relied upon 42 C.F.R. § 51.41(c)(4), which conflicts with Congressional intent as expressed in the text of the Act itself; (2) it erred in failing to conclude that PAMII preempts the Colorado laws providing a privilege to peer review and quality assurance records; (3) it erred in concluding that the Act and 42 C.F.R. § 51.41(c)(4) recognize two distinct classes of records (patient records and hospital records) and that CLA may only have access to patient records, which do not include peer review and quality

-9-

assurance records; and (4) the plain meaning of the statutory language conferring access to "all records of any individual" is expansive and necessarily includes peer review and quality assurance records.

Defendants respond: (1) § 10805 of PAMII grants access to all records of *patients*, which do not include peer review or quality assurance records, and § 10806 grants access only to certain records of *hospitals* and *agencies*, so that § 10805's arguably expansive language ("all") is inapplicable to § 10806 and does not compel the conclusion that peer review and quality assurance records are hospital records under § 10806; (2) the reauthorization of PAMII in 1991 was the equivalent of the reenactment of a new statute, so legislative history from 1991 accurately reflects Congressional intent; and (3) 42 C.F.R. § 51.41(c)(4) does not conflict with the express language of the Act, but, rather, is a valid regulation, consistent with the 1991 legislative history, and it protects peer review and quality assurance records from disclosure because they are privileged under Colorado law.

"When interpreting the language of a statute, the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls." Quarrell, 310 F.3d at 669 (citation omitted). "'In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" United States v. Seminole Nation, No. 01-7108, 2002 WL

31895070 at *4 (10th Cir., Dec. 31, 2002) (quoting K Mart Corp. v. Cartier, Inc.,

486 U.S. 281, 291 (1988)). If we find ambiguity, we "may seek guidance from

Congress's intent, a task aided by reviewing the legislative history." In re Geneva

Steel Co., 281 F.3d 1173, 1178 (10th Cir. 2002). Further, if a statute is silent or

ambiguous on a particular issue, we must defer to the interpretation of the statute

by the agency charged with administering it "if [that interpretation] is based on a

permissible construction," that is, "unless it is arbitrary, capricious, or manifestly

contrary to the statute." Pharmanex v. Shalala, 221 F.3d 1151, 1154 (10th Cir.

2000) (citing Chevron, U.S.A. v. Natural Res. Def. Council, Inc., 467 U.S. 837,

843, 844 (1984)).

We begin with the statutory language. PAMII, by its terms, provides access

to "all records of . . . any individual." 42 U.S.C. § 10805(a)(4)(A). Section 10806

further defines "access to records." It also specifically states, "[i]f the laws of a

State prohibit an eligible system from obtaining access to the records of

individuals with mental illness in accordance with section 10805(a)(4) . . . and this

section," then those sections shall not apply until the earlier of either the time the

prohibition is removed or May 23, 1988. 42 U.S.C. § 10806(b)(2)(C). Finally,

"[a]s used in this section, the term 'records' includes reports prepared by any staff

of a facility . . . or reports prepared by an agency charged with investigating

reports of incidents . . . [occurring at facilities] and discharge planning records."

42 U.S.C. § 10806(b)(3)(A). Thus, a plain reading of the statute as a whole indicates that CLA should have access to "all records of any individual" including "reports prepared by any staff of a facility" and "reports prepared by an agency" which investigates incidents occurring at facilities. What we must determine, however, is whether a rational and logical reading of the statute permits the conclusion that peer review and/or quality assurance records are encompassed by "all records of any individual" including "reports prepared by any staff of a facility," or "reports prepared by an agency."

While this is an issue of first impression in our circuit, we do have the benefit of a few decisions from other courts. The Third Circuit addressed the issue of access to privileged peer review materials in Pennsylvania Prot. & Advocacy, Inc. v. Houstoun, 228 F.3d 423 (3d Cir. 2000). That court held that peer review reports fall within § 10805(a)(4)(A)'s provision of access to "all records of . . . any individual." Id. at 426. It also held that they "fall squarely within the definition provided in" § 10806(b)(3)(A) as "'reports prepared by . . . staff of a facility rendering care and treatment.'" Id. (quoting 42 U.S.C. § 10806(b)(3)(A)). [7]

_____

[7]It rejected the argument, which defendants here also make, that the definition of "records" contained in § 10806 is confined to that section alone because § 10806 begins its definition of "records" with the phrase, "[a]s used in this section." The Third Circuit concluded, "it is clear that the definition of
(continued...)

-12-

With respect to its conclusion that a peer review report was a record "of any individual," the Third Circuit rejected the defendant's argument that it could not be a record "of any individual" because peer review reports belong to the hospital, not the individual patient:

> [T]he preposition "of" may be used to show connection or association as well as ownership, and it seems clear that the term is used in the former sense here. Presumably, many, if not all, of Allentown State Hospital's records concerning Dolores L. are just as much its property as the peer review reports, but there is no doubt that PAMII was meant to require the hospital to give PP & A access to those records, as the hospital did.

Id. at 427 (citing Random House Dictionary of the English Language 999 (1967)).

The Third Circuit also rejected the argument that PAMII could not compel disclosure where state law restricted disclosure: "[t]here is nothing in the text of PAMII . . . that supports the Commonwealth's contention that this federal statute does not require disclosure of peer review reports that are protected under state law. Indeed, there is not even any mention of peer review reports in the legislative

---

7(...continued)
'records' in § 10806 controls the types of records to which [plaintiff] 'shall have access' under § 10805 because § 10805 provides that an eligible system 'shall . . . in accordance with section 10806 of this title, have access to' certain records." Id. at n.1. We agree with the Third Circuit that §§ 10805 and 10806 should not be read in isolation. Section 10806 amplifies and describes what kinds of records are included in those records to which a P&A System has access under §§ 10805 and 10806. See Robbins v. Budke, 739 F. Supp. 1479, 1489 (D.N.M. 1990) (holding that §§ 10805(a)(4) and 10806 compelled disclosure of "all records, including incident reports, medical referrals, seclusion and restraint logs, and internal investigation reports which may not be in residents' charts").

-13-

history that accompanied the initial passage of the Act in 1986." Id. Further, the court held that "[t]he interpretation of PAMII set out in 42 C.F.R. § 51.41(c)(4) does not represent a reasonable interpretation of the statute, and we must therefore reject it." Id. (citing Chevron, U.S.A., Inc. , 467 U.S. at 843-44). As the court explained:

> PAMII requires that groups such as PP &A be given access to a defined category of records. Peer review reports either fall within that definition or they do not. The statutory language cannot reasonably be construed to encompass identical peer review reports in some states but not others. If Congress wished to achieve that result, it needed to enact different statutory language. It could not achieve that result, in the face of the statutory language it enacted, simply by inserting a passage in a committee report. Nor could that result be achieved by means of a regulation.

Id. at 428. The Third Circuit therefore held that "PAMII preempts any state law that gives a healthcare facility the right to withhold such records." Id.

Finally, the court observed that, although PAMII would preempt any state law which in fact gave a facility the right to withhold peer review records, it noted that there was no actual conflict between PAMII's disclosure requirement and the particular state law at issue because the relevant state statute provided that peer review records "'shall not be subject to discovery or introduction into evidence *in any civil action.* '" Id. (quoting Pa. Stat. Ann. tit. 63 § 425.4)). The plaintiff in that case was not seeking disclosure in connection with a civil action; rather, like CLA in this case, it was "seeking the peer review reports in order to fulfill the

-14-

advocacy and investigatory purposes of PAMII." Id.; see also Iowa Protection and Advocacy Servs., Inc. v. Gerard Treatment Programs , 152 F. Supp. 2d 1150 (N.D. Ia. 2001) (following Houstoun ).[8]

The New Hampshire Supreme Court reached the opposite conclusion in Disabilities Rights Ctr., Inc. v Comm'r , 143 N.H. 674 (N.H. 1999). In that case, New Hampshire laws barred access to quality assurance records. A P& A System sought disclosure of those records under PAMII, notwithstanding the state bar. The New Hampshire court first held that § 10806(b)(2)(C) expressly preempts a state law barring disclosure of "records" as defined in PAMII. It then characterized 42 C.F.R. § 51.41(c)(4) as "a rule clarifying the definition of 'records'" contained in § 10806(b)(3)(A), id. at 677-78, and declared it "reflective of Congress' intent to spare [the state law barring access to quality assurance records] from preemption." Id. at 678. Then, relying upon the Committee Report language during the 1991 reauthorization of PAMII, the New Hampshire court concluded that "[t]he legislative history of PAMII states that Congress did not intend to preempt state laws protecting the records maintained by 'medical care evaluation or peer review committees' that are established by hospitals to achieve accreditation by the JCAHO." Id. It therefore concluded that "Congress did not

_____

[8]Although the Third Circuit in Houstoun addressed only peer review records, not quality assurance records, its reasoning would apply equally to quality assurance records.

intend to preempt RSA 151-D:2 [prohibiting access to quality assurance records]."

Id. Finally, the court supported its reasoning by considering the purposes of both

PAMII and the state law conferring a privilege on quality assurance records:

> [I]t is significant that PAMII and RSA 151-D:2 serve a similar end. Both statutes benefit mentally ill individuals by fostering the improvement of services and conditions at medical and psychiatric care facilities. Were we to find preemption, the [facility] would no longer be encouraged to engage in self-critical review and the mentally ill individuals receiving services there would no longer benefit from the improvements that flow from its quality assurance program. In this sense, preemption would create a result contrary to the basic congressional purpose that underlies PAMII.

Id. at 678-79.

We find the reasoning of the Third Circuit to be more persuasive, and we

therefore agree that CLA should have access to peer review and quality assurance

records. We begin by noting that the statutory phrase "all records of . . . any

individual" is quite broad. While defendants urge us to follow the district court

and find that this addresses only "patient records," not "hospital records," and peer

review and quality assurance records are not "patient records" because they do not

"belong" to the patient, we agree with the Third Circuit's observation that "of" in

this context need not be read so narrowly. Thus, a rational reading is that it refers

to records pertaining to or relating to an individual. See Houstoun , 228 F.3d at

427 ("[T]he preposition 'of' may be used to show connection or association, as

well as ownership."). Peer review or quality assurance records involving the care

-16-

of an individual could easily fit within that definition of records, along with myriad other records relating to an individual and/or his or her care.

Additionally, we agree with the Third Circuit that § 10806(b)(3)(A)'s reference to records including "reports prepared by any staff of a facility rendering care and treatment" on its face encompasses peer review and quality assurance records. [9] In short, examining the language of the statute and according it a straightforward interpretation, we conclude, like the Third Circuit, that "all records of . . . any individual" and "reports prepared by . . . staff of a facility" include peer review and quality assurance records relating to a patient and his or her care.

Defendants make a number of arguments against this interpretation. First, they argue it "renders § 10805 internally inconsistent" because § 10805 states that patient authorization is a prerequisite to CLA access to the records of the patient, and, under Colorado law, "a patient has no right to obtain professional review records, and no authority to agree to their release." Answer Br. at 10. Further, defendants argue, if mental health patients have access to peer review and quality assurance records but other medical patients do not, mental health patients are unfairly advantaged. But, the fact that the patient's consent is required before a

---

[9]The description of the records at issue here, submitted under seal, demonstrates that many of them were prepared by, or involved, Institute staff. See Appellant's App. 98-110.

*P&A System* has access to the patient's records in order to conduct its investigation under PAMII into allegations of abuse or neglect does not mean that patients themselves thereby have unfettered access to peer review records. As discussed more fully, *infra*, § 10806 imposes an obligation of confidentiality on a P&A System "which, pursuant to section 10805(a)(4) . . . has access to records which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services." 42 U.S.C. § 10806(a). Thus, if Colorado law imposes an obligation on the Institute to maintain a record in a confidential manner, that same confidentiality obligation is imposed on the P&A System obtaining access to the record. [10]

Second, defendants argue that § 10806(b)(3), which was added in 1988, and includes within the definition of "records" "reports prepared by any staff of a facility" and "reports prepared by an agency charged with investigating incidents of abuse, neglect, and injury" would not have been necessary if § 10805 already included "hospital records." We disagree. We have held that "all records . . . of any individual" in § 10805 include records, maintained by a treatment facility or hospital, which relate or pertain to an individual patient and could include peer

---

[10]Defendants argue that § 10806(b)(1) and (2) compel P&A Systems to disclose any records they obtain, including peer review materials, to the patients to whom the records pertain. They assert that CLA has never denied any such obligation. Whether that section in fact compels such disclosure is not before us.

review and quality assurance records relating to that patient's care. We do not hold that it necessarily includes all "hospital records," in whatever sense defendants would define that somewhat vague term. Section 10806(b)(3) expands the categories of records available to a P&A System to include reports prepared by facility staff, reports prepared by agencies investigating specific incidents, and discharge planning records. We fail to see why our interpretation makes that section redundant. The fact that peer review and quality assurance records could be covered by either section does not render § 10806(b)(3) completely unnecessary. [11]

Finally, defendants argue that PAMII is ambiguous as to whether peer review and quality assurance records are accessible, and, in the face of that ambiguity, we must examine legislative history and defer to any reasonable interpretation of the Act by the Secretary of Health and Human Services, the agency charged with administering the Act. They further assert that the Committee Report language in connection with the 1991 reauthorization provides clear indicia of congressional intent, and 42 C.F.R. § 51.41(c)(4) is a valid

_____

[11]We disagree with defendants' suggestion that "[s]ubsection (b)(3) appears to be geared toward the reports of outside investigative agencies, and the reports the facility prepares for these agencies." Answer Br. at 12. On its face the statute sweeps more broadly than that.

regulation expressing that intent and reasonably interpreting the Act, and is entitled to deference.

In support of the argument that the Congressional Report comments in 1991 are an authoritative expression of congressional intent, defendants cite <u>Rothe Dev. Corp. v. United States Dep't of Defense</u>, 262 F.3d 1306, 1322 n.15 (Fed. Cir. 2001) for the proposition that "for the purpose of considering congressional motivation, the process of reauthorization is equivalent to simultaneously allowing a statute to lapse and re-enacting it."

While we acknowledge that language contained in a committee report is an expression of legislative intent, it is not, by itself, sufficient to alter our reasonable interpretation of the statute, particularly in view of the fact that Congress chose not to amend the text of the Act in 1991 to reflect or implement in any way the committee report remarks. And, as the committee report remarks themselves indicate, Congress can hardly have been unaware of the existence of peer review committees and the fact that virtually all states had statutes protecting peer review records from disclosure. But, despite that, the text of the Act regarding record access was not amended, although other amendments were made, and no amendment was made to § 10806(b)(2)(C), which specifically addresses the situation where laws of a state "prohibit an eligible system from obtaining access

to the records of individuals with mental illness in accordance with section 10805(a)(4)." 42 U.S.C. § 10806(b)(2)(C).

We agree with the Third Circuit that "[t]he interpretation of PAMII set out in 42 C.F.R. 51.41(c)(4) does not represent a reasonable interpretation of the statute." Houstoun, 228 F.3d at 427. We reiterate that court's succinct summary:

> PAMII requires that groups such as [plaintiff P&A System] be given access to a defined category of records. Peer review reports either fall within that definition or they do not. The statutory language cannot reasonably be construed to encompass identical peer review reports in some states but not in others. If Congress wished to achieve that result, it needed to enact different statutory language. It could not achieve that result, in the face of the statutory language it enacted, simply by inserting a passage in a committee report. Nor could that result be achieved by means of a regulation.

Id. at 428 (emphasis added). We therefore hold that PAMII requires disclosure to CLA of the peer review and quality assurance records it seeks from defendants.

Finally, defendants next argue that, even if PAMII provides access to peer review and quality assurance records, Colorado's statutory privileges for such records shield them from disclosure to CLA. CLA responds that PAMII preempts state law on this issue.

> Federal law preempts state law in three circumstances: (1) when Congress explicitly defines the extent to which the enacted statute preempts state law; (2) when state law actually conflicts with federal law; or (3) when state law attempts to regulate "conduct in a field that Congress intended the Federal Government to occupy exclusively."

United States v. Wagoner County Real Estate, 278 F.3d 1091, 1096 (10th Cir. 2002) (quoting Choate v. Champion Home Builders Co., 222 F.3d 788, 792 (10th Cir. 2000)). Further, in analyzing preemption, "congressional intent is the 'ultimate touchstone.'" Id. (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)). CLA argues PAMII preempts Colorado's statutes barring disclosure of peer review and quality assurance records under any of the three tests.

The magistrate judge considering this case held that PAMII contains express preemption language:

> If the laws of a State prohibit an eligible system from obtaining access to records of individuals with mental illness in accordance with section 10805(a)(4) of this title and this section, section 10805(a)(4) of this title and this section shall not apply to such system before–
>
> > (i) the date such system is no longer subject to such a prohibition; or
> > (ii) the expiration of the 2-year period beginning on May 23, 1986, whichever occurs first.

42 U.S.C. § 10806(b)(2)(C). We agree that that language reveals a congressional intent to preempt state laws prohibiting access to records under § 10805 or § 10806. See Iowa Prot. and Advocacy Servs., Inc. v. Rasmussen, 206 F.R.D. 630, 639 (S.D. Ia 2001) (citing § 10806(b)(2)(C) for its conclusion that state law is expressly preempted); Wisconsin Coalition for Advocacy, Inc. v. Czaplewski, 131 F. Supp. 2d 1039, 1048-49 and n.3 (E.D. Wis. 2001) (citing § 10806(b)(2)(C) and

stating "the express language of the federal statute[] demonstrate[s] that Congress intended [its] provisions to preempt contrary state law"); cf. Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth Servs., 879 F. Supp. 1110, 1111-12 (N.D. Okla. 1995) (noting that state law barring access to patient records without a court order is preempted by PAMII because it actually conflicts with PAMII). [12]

Furthermore, there is an actual conflict between PAMII and the Colorado privilege laws with respect to peer review and quality assurance/management records. We have held that PAMII permits P&A Systems to have access to peer review and quality assurance records in connection with its investigations. Colorado law, on the other hand, exempts them from disclosure in certain circumstances. There are thus situations when the federal law and the state law will conflict. To the extent Colorado's laws conflict with PAMII, and the access

---

[12]Defendants argue that § 10806(b)(2)(C) has no bearing on the record access provisions of § 10806(b)(3) because they argue § 10806(b)(2)(C) only mentions access to records under § 10805(a)(4) and because "the two-year time period referenced in Subsection (b)(2)(C) had already expired before the § 10806 'hospital/agency records' provision was enacted in 1988." Answer Br. at 30. This argument ignores the fact that subsection (b)(2)(C) expressly refers to access to records under § 10805(a)(4) *and* "this section" (§ 10806), and the fact that when Congress added subsection (b)(3) in 1988 it made no change to subsection (b)(2)(C). In any event, defendants essentially concede that § 10806(b)(2)C) preempts state laws interfering with access to records under § 10805(a)(4).

to peer review and medical assurance records which PAMII provides, they are preempted. [13]

## CONCLUSION

For the forgoing reasons, we REVERSE the judgment of the district court and REMAND this case for further proceedings consistent herewith. We grant the motion to transmit records under seal.

---

[13]We note that the Third Circuit in <u>Houstoun</u> concluded that there was no actual conflict between PAMII and the state privilege laws at issue in that case because the state laws only exempted peer review materials from disclosure in any civil action, and the P&A System in that case sought those materials only to conduct its investigation. Similarly, in this case, the Colorado statutes state that the quality management materials "shall not be subject to subpoena or discoverable or admissible as evidence in any civil or administrative proceeding," Colo. Rev. Stat. § 25-3-109(4), and peer review materials "shall not be subject to subpoena or discovery, and shall not be admissible in any civil suit brought against a physician who is the subject of such records." Colo. Rev. Stat. § 12-36.5-104(10)(a).

CLA asserts, and repeated at oral argument of this appeal, that it would maintain the confidentiality of peer review records. Defendants argue that will be impossible, and asserts that the CLA would be obligated to reveal peer review records to patients under certain circumstances. That issue is not before us, however. Thus, we hold only that to the extent the Colorado laws in fact bar disclosure of peer review or quality assurance records to the CLA for its use in investigating incidents pursuant to its mandate under PAMII, they are preempted by PAMII.